UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ALFREDO GOMEZ,
*on behalf of himself and others similarly situated,*

       Plaintiff,

                          Case No. 20-cv-1802-pp

   v.

V. MARCHESE & CO.,
and CUT FRESH, LLC,

       Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION TO SUPPLEMENT RECORD ON
CONDITIONAL CERTIFICATION (DKT. NO. 66), DENYING AS MOOT
PLAINTIFF'S MOTION TO COMPEL RESPONSE TO REQUEST TO ADMIT
(DKT. NO. 42), DENYING AS MOOT PLAINTIFF'S MOTION FOR LEAVE TO
FILE REPLY BRIEF (DKT. NO. 53), DENYING AS MOOT PLAINTIFF'S
MOTION TO STRIKE (DKT. NO. 60), DENYING WITHOUT PREJUDICE
DEFENDANTS' REQUESTS FOR COSTS (DKT. NOS. 50, 55), CONSTRUING
AS MOTIONS TO RESTRICT AND DENYING WITHOUT PREJUDICE
PLAINTIFF'S MOTIONS TO SEAL (DKT. NOS. 44, 62), GRANTING IN PART
PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION (DKT. NO. 45)
AND DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO CERTIFY
CLASS (DKT. NO. 70)**

---

       The plaintiff, who worked for defendant Cut Fresh as a sanitation

employee and at times also cleaned fruits and vegetables, filed an amended

complaint on behalf of himself and others similarly situated, alleging that the

defendants[1] failed to pay for the principal activities performed at the beginning

---

[1] The plaintiff believes he worked for Cut Fresh, LLC, but also named V.
Marchese & Co. as a defendant "out of an abundance of caution given the close
relationship between the two entities, in case Cut Fresh would claim Marchese
was his employer." Dkt. No. 11 at ¶1.

1

and end of their shifts. Dkt. No. 11. These activities including washing hands and donning and doffing protective gear. Id. at ¶1. The plaintiff also alleges that the defendants failed to count meal breaks of less than thirty minutes as hours worked by the employees. Id. The plaintiff alleges that he himself never had a full thirty minutes for lunch. Id. at ¶17. According to the plaintiff, the defendants violated the Fair Labor Standards Act and Wisconsin law, specifically Wis. Stat. §103.02 and §109.03(1) and (5). Id. at ¶1.

In the year after he filed the amended complaint, the plaintiff filed eight motions, including a motion to compel, motions to supplement, a motion to strike, motions to seal and motions related to conditional and class certification. All these filings have created an unnecessary procedural tangle and have prompted requests from the defendants to be reimbursed for the cost of having to respond to some of them. The court will grant the plaintiff's motion to withdraw his Rule 7(h) motion to compel, dkt. no. 66; deny as moot the plaintiff's motion to file a reply brief, dkt. no. 53; deny the plaintiff's motion to strike, dkt. no. 60; construe as motions to restrict and deny without prejudice the plaintiff's motions to seal documents, dkt. nos. 44 and 62; deny without prejudice the defendants' requests to impose sanctions on the plaintiff's counsel, dkt. nos. 55, 61; grant the plaintiff's motion for conditional certification as to Cut Fresh, dkt. no. 45; and deny without prejudice the plaintiff's motion to certify the class, dkt. no. 70.

I. **Plaintiff's Expedited Non-Dispositive Motion to Compel Response to Request to Admit (Dkt. No. 42); Plaintiff's Motion for Leave to File Reply Brief (Dkt. No. 53); Defendants' Requests for Reimbursement of Costs (Dkt. Nos. 50, 55); Plaintiff's Motion to Strike (Dkt. No. 60); Plaintiff's Motion to Supplement the Record on Conditional Certification (Dkt. No. 66)**

On September 27, 2021—only three months or so into the discovery process—the plaintiff filed a document titled "Plaintiff's Expedited Non-Dispositive Motion to Compel Response to Request to Admit." Dkt. No. 42. The court assumes that the plaintiff meant to utilize the expedited, non-dispositive motion procedure provided in Civil Local Rule 7(h) of the Eastern District of Wisconsin. But the motion did not comply with that rule, which requires a party seeking to utilize it to designate the motion "as a 'Civil L.R. 7(h) Expedited Non-Dispositive Motion.'" Civil L.R. 7(h)(1) (E.D. Wis.). The motion asked the court to "compel a response to request to admit #1 that [the plaintiff] sent to Defendant V. Marchese & Co., which asked whether Marchese had any employees who, during the time period on or after December 1, 2017, for a single shift punched in twice, and punched in 15 minutes or less after he or she punched out." Dkt. No. 42 at ¶1. The motion said that the court "should also overrule Marchese's specific objections to the request to admit." Id. at ¶5. In its last paragraph, the motion stated that "[b]ecause of Marchese's refusal to both answer this request to admit initially, and after Plaintiff counsel clarified the request by email, Plaintiff will not be able to obtain an answer to this request to admit by the conditional certification deadline of October 1, 2021." Id. at ¶6. So, although the caption of the motion didn't say as much, the

3

plaintiff also asked the court to "grant leave to supplement" the plaintiff's motion for conditional certification—which had not yet been filed. Id.

Four days later, the court received from the defendants a response to the motion. Dkt. No. 50. They asserted that they could make no sense of the request to admit, so they responded by objecting that the request was compound, vague and confusing and offering to supplement if the plaintiff clarified what he was asking for. Id. at 2. They explained that three weeks later, the plaintiff's counsel sent them an email saying, "This request is asking for an admission that at least one employee other than Named Plaintiff, on at least one day, punched in at the beginning of the work day, punched out for lunch, and then punched in 15 minutes or less after he or she punched out for lunch." Id. The defendants opined that this wasn't a clarification of the request for admission—it was a different request and the plaintiff didn't serve it on the defendants. Id. Counsel for the defendants indicated that they didn't have a chance to review the plaintiff's email until September 27, 2021—the day on which the plaintiff's counsel filed the motion to compel, "[w]ithout even attempting to pick up the phone." Id.

The defendants pointed out that the plaintiff's counsel did not file the required certification under Civil L.R. 37 that he had tried in good faith to meet and confer with the defendants before filing the motion to compel. Id. at 5. They argued that they had responded to an "incomprehensible" request to admit with a clear, concise objection and had offered to supplement if the plaintiff clarified the request. Id. at 6. They noted that the plaintiff did not cite

4

any rule under which he was moving, so they could not tell whether he was asking the court to impose sanctions under Fed. R. Civ. P. 11 or 37. <u>Id.</u> at 8 n.3. The defendants asked the court to deny the motion and to order the plaintiff to reimburse them for the cost of responding to the motion to compel. <u>Id.</u> at 9.

Two weeks later, the court received from the plaintiff a motion for leave to file a reply brief, arguing that the defendants' response to the motion to compel exceeded the page limits in Civil L.R. 7(h)(2)—the local rule the plaintiff had failed to reference in the title of the motion to compel or in the body of the motion. Dkt. No. 53 at 1. Civil Local Rule 7(h)(2) limits a defendant to three pages in opposition to a Rule 7(h) expedited, non-dispositive motion, along with a two-page affidavit or declaration. The plaintiff complained that the defendants had filed an eight-page brief and an affidavit with twenty-nine paragraphs. Dkt. No. 53 at 1-2. The plaintiff proposed the following solution: that the court treat his motion to compel as a non-expedited motion, allow him to file a reply brief in support of his own motion within fourteen days of the date the defendants had filed their response and allow him to address the question of "whether a motion regarding the sufficiency of a response or objection to a request to admit under Rule 36(a)(6) is a motion to compel discovery within the meaning of Rule 37(a)(1) of the Federal Rules of Civil Procedure, and therefore subject to the meet and confer requirements imposed by both that Rule and Civil L.R. 37?" <u>Id.</u> at 2.

Ideally, none of the above pleadings would have been filed at all; next most ideal would have been for the skirmish to end there. Neither ideal was realized; the defendants filed a brief in opposition to the plaintiff's motion for leave to file a reply brief, reiterating the arguments made in their earlier brief opposing the motion to compel. Dkt. No. 55. The defendants suggested that "[t]he Court should, on its own motion, impose sanctions on Plaintiff's counsel," even though the defendants had asked the court to do just that in their earlier pleading. Id. at 3. They asked the court to admonish the plaintiff's counsel for his conduct and to order him to reimburse the defendants for the legal fees they'd in filing the earlier response and this latest salvo. Id.

Apparently concluding that the defendants had gained a tactical advantage by filing two opposition briefs, the plaintiff moved to strike the brief in opposition to the motion to file a reply as an unauthorized sur-reply. Dkt. No. 60. The plaintiff reasoned that the court's rules do not authorize sur-reply briefs. Id. at 2. Ironically, he cited Civil L.R. 7 in arguing that the court's local rules do not provide for sur-replies. Id. at 2. He argued that the court should disregard the "sur-reply" as a nullity. Id.

Not to be deprived of the opportunity to fire the last shot, the defendants filed a response to the motion to strike. Dkt. No. 61. They again concluded by arguing that the court should, "on its own motion," sanction the plaintiff's counsel by admonishing him and making him reimburse the defendants for their fees; this section of the response was an almost verbatim recitation of the language from their previous filing. Id. at 2-3.

6

The court did not pounce on the invitation to wade through this volley of filings. Perhaps, just this once, the court's failure to act promptly was a good thing; three months later, the plaintiff filed a motion to supplement the record on class certification. Dkt. No. 66. Nothing in the caption of that motion suggested that it was in any way related to the plaintiff's motion to compel. Yet on the last page of that motion, the plaintiff indicated that documents the plaintiff had received from the defendants on December 3, 2021 had mooted the motion to compel, and he asked the court to permit him to withdraw it. Dkt. No. 66 at 3 (asking for leave to withdraw dkt. no. 42).

The court will grant the plaintiff's request to supplement the record on conditional certification. It will not allow the plaintiff to "withdraw" the motion to compel; it's not clear how one "withdraws" an electronically filed document. The court will, however, deny the motion to compel as moot and will deny the motion to strike.

As the court implied earlier, most of these motions, responses or replies were unnecessary. The plaintiff's counsel *did* have an obligation to meet and confer with opposing counsel before filing a motion to compel. This court has held that "a motion to determine the sufficiency of answer under Rule 36(a)(6) appears to fall within Rule 37(a)(1)'s general application to motions for orders 'compelling disclosure or discovery.'" <u>Fazal v. Advanced Tabco</u>, No. 09-C-1116, 2010 WL 4363376, at *3 (E.D. Wis. Oct. 22, 2010). And the plaintiff in this case did not file a motion to determine sufficiency of an answer to a discovery demand—he filed a motion to *compel* the defendants to answer a discovery

7

demand. That means that under Civil L.R. 37, the plaintiff was required to accompany the motion to compel "by a written certification . . . that, after the movant in good faith has conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action, the parties are unable to reach an accord." That certification should have recited the date and time of the "conference or conferences and the names of all parties participating in the conference or conferences." Id.

Counsel's declaration that he had sent a single email to defense counsel two weeks prior to filing the motion to compel and had not receive a response, dkt. no 43 at ¶4, is not sufficient. The purpose of the meet-and-confer requirements in Fed. R. Civ. P. 37 and Civil L.R. 37 is to strongly encourage parties to try to work out issues like this one among themselves before involving the court. As the defendants pointed out, the plaintiff's counsel could have called them and said, "Hey—I sent you guys an email with the clarification you requested on the first request for admission. Haven't heard anything—did you get it? My deadline for filing the motion for conditional certification is coming up and I need the response to the request to admit to file that motion." The plaintiff's counsel also could have asked the court to extend the deadline for filing the motion for conditional certification until he could communicate with defense counsel. It is possible—even likely—that if either of those things had happened, this order would have been significantly shorter.

Nor, as the court has indicated, did the plaintiff comply with the court's expedited, non-dispositive motion procedure. He did not caption the motion as

8

required by that rule. Perhaps if he had, the defendants would have consulted it, too, and realized that it contains page limits. While calling attention to the plaintiff's failure to comply with the rules, the defendants ignored Civil L.R. 7(h)(2), which required them to limit their response to three pages. And the defendants repeatedly asked the court to act on its own motion to sanction the plaintiff's counsel, even though the defendants themselves already had made that request, albeit burying it in a paragraph at the end of each of their briefs.

While the court should have intervened sooner, the parties compounded the problem by filing document after document after document. The plaintiff's counsel is correct that the court's local rules do not provide for sur-replies. There's a reason for that: to prevent the court from being pelted with "I want to speak last!" motions. Someone—the plaintiff's counsel or defense counsel, preferably both—should have exercised some restraint and just stopped the madness.

Finally, if a party wants a court to do something, the party must file a motion that clearly identifies the relief the party seeks—in the caption of the motion, in the body and in the prayer for relief. Burying a request for relief in a brief or in the final paragraph of a motion that seeks altogether different relief puts the burden on the court to sift through and figure out all the different forms of relief a party is requesting and puts the party at risk of the court never seeing the request.

Further, Civil L.R. 7(a) requires that every motion cite the statute or rule authorizing the relief the party is requesting. This rule holds the parties

9

accountable—making sure that there is a legal basis for the court to grant the relief the party seeks. For example, the plaintiff did not cite authority authorizing the court to strike the defendants' brief in opposition to his motion to file a reply brief. Motions to strike generally are disfavored and courts don't often grant them. See Heller Fin., Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1294 (7th Cir. 1989). Fed. R. Civ. P. 12(f) allows the court to "strike from a pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." But Rule 12(f) motions are applicable only to pleadings, such as a complaint or an answer, and not to motions or briefs. See FEDERAL PRACTICE AND PROCEDURE (WRIGHT & MILLER) §1380; Fed. R. Civ. P. 7(a) (defining pleadings to include a complaint, counterclaim, crossclaim, third-party complaint, or reply to an answer). The court is not aware of any authority that would allow it to strike an opposition brief simply because the party against whom it was filed disagrees with its content. The court would have denied the motion to strike even if it were not moot.

For the same reason, the court will deny the defendants' requests that the court require the plaintiff's counsel to reimburse them for their fees. Dkt. No. 50 at 9; Dkt. No. 55 at 4 These requests were buried at the end of the defendants' opposition briefs, and the defendants did not cite any authority or address the applicable standards. The court has "inherent authority to sanction litigants for abuse of process." Waivio v. Bd. of Trustees of Univ. of Ill. at Chi., 290 F. App'x 935, 937 (7th Cir. 2008). But "[i]n determining an appropriate sanction, the court must consider 'the extent of the misconduct,

Case 2:20-cv-01802-PP   Filed 08/10/22   Page 10 of 54   Document 78

the ineffectiveness of lesser sanctions, the harm from the misconduct, and the weakness of the case.'" <u>Williams v. Heasthaven</u>, No. 20-CV-504-PP, 2021 WL 1894704, at *3 (E.D. Wis. May 11, 2021) (quoting <u>Donelson v. Hardy</u>, 931 F.3d 565, 569 (7th Cir. 2019)). The defendants' requests for sanctions did not address the effectiveness of lesser sanctions and only gave cursory treatment to the other factors. Nor did the defendants address their own role in driving up their litigation costs by continuing to file what was virtually the same brief in response to each of the plaintiff's filings.

The court expects that as the case moves forward, both parties will hew carefully to the requirements of the federal and local rules and that they will make every effort to communicate with each other—not just by email, but by *talking to each other*—before bringing their misunderstandings or even disagreements to the court.

## II.     Plaintiff's Motions to Seal (Dkt. Nos. 44, 62)

The plaintiff has filed two motions to seal. The first motion asks the court to seal four documents attached to counsel's declaration in support of the plaintiff's motion for conditional certification and the portion of the supporting brief that references the four exhibits. Dkt. No. 44. The plaintiff explains that the court previously issued a protective order and that under that order, the defendants had designated the documents as confidential. <u>Id.</u> at ¶1. The plaintiff says that these documents describe internal policies and procedures to safeguard the cleanliness and safety of the produce products, marketing material that states Cut Fresh's commitment to delivering safe and healthful

11

products and how it promises to fulfill its commitment and internal analysis of hazards associated with the processing and storage of produce. Id. at ¶2. The plaintiff speculates that these documents appear to address proprietary policies and marketing strategies of Cut Fresh "so their disclosure to the public domain and therefore Cut Fresh's competitors could cause competitive harm to Cut Fresh." Id. The plaintiff asserts that the protective order "additionally prohibited counsel for the parties from disclosing to any third parties information that is designated as confidential." Id. at ¶3. He asserts that if he had filed the memorandum of law without redacting non-publicly available information derived from the documents, that could have constituted disclosure of confidential information to third parties through the court's electronic filing system and could have harmed the defendants. Id.

The plaintiff filed a second motion, indicating that footnote 1 in the plaintiff's reply brief in support of the plaintiff's motion for conditional certification cites two documents that Cut Fresh has deemed confidential. Dkt. No. 62 at 1. The plaintiff says that the reply brief "paraphrases" portions of these documents that describe internal policies and procedures to safeguard the cleanliness and safety of the produce products. Id. The motion asks the court "to file under seal the portion of the Memorandum of Law that references non-publicly available information solely derived from documents that Cut Fresh [h]as designated as confidential." Id. at 2.

The defendants have not filed anything supporting or opposing either motion.

This court's General Local Rule 79(d)(3) states:

Any motion to restrict access or seal must be supported by sufficient facts demonstrating good cause for withholding the document or material from the public record. If the documents or materials sought to be restricted/sealed have been designated confidential by someone other than the filing party, the filing party may explain in the motion that the documents or materials are being filed under seal pursuant to a Court-approved protective order or otherwise, and that the filing party supports, objects to, or takes no position on the continued sealing of the documents or materials. In response, the person or party that originally designated the documents or materials as confidential may, if it chooses, provide sufficient facts demonstrating good cause to continue sealing the documents or materials. *Absent a sufficient factual basis demonstrating good cause sufficient to seal the documents or materials, the motion must be denied and the documents or materials publicly filed by the Clerk of Court, unless otherwise ordered by the Court.*

(Emphasis added.)

In Baxter Intern., Inc. v. Abbott Labs., 297 F.3d 544 (7th Cir. 2002), the Seventh Circuit addressed generic motions to seal based on protective or confidentiality orders. The court acknowledged that parties often enter into "broad secrecy agreement[s] . . . in order to expedite [the discovery] process by avoiding document-by-document analysis," and it opined that "[s]ecrecy is fine at the discovery stage, before the material enters the judicial record." Id. at 545 (citing Seattle Times Co. v. Rhinehart, 467 U.S. 20 (1984)). The court emphasized, however, that "those documents, usually a small subset of all discovery, that influence or underpin the judicial decision are open to public inspection unless they meet the definition of trade secrets or other categories of bona fide long-term confidentiality." Id. (citing Grove Fresh Distribs., Inc. v. Everfresh Juice Co., 24 F.3d 893 (7th Cir. 1993); In re Continental Ill. Securities Litig., 732 F.2d 1302 (7th Cir. 1984)). Because the court record is

13

critical to a court's judicial decision, "any claim of secrecy must be reviewed independently." Id. at 545-546.

The Baxter court explained why documents dispositive to "any litigation enter the public record notwithstanding any earlier agreement":

> How else are observers to know what the suit is about or assess the judges' disposition of it? Not only the legislature but also students of the judicial system are entitled to know what the heavy financial subsidy of litigation is producing. These are among the reasons why very few categories of documents are kept confidential once their bearing on the merits of a suit has been revealed. In civil litigation only trade secrets, information covered by a recognized privilege (such as the attorney-client privilege), and information required by statute to be maintained in confidence (such as the name of a minor victim of a sexual assault), is entitled to be kept secret on appeal. . . . As we remarked in *Union Oil* [*Co. v. Leavell*, 220 F.3d 562 (7th Cir. 2000)], many litigants would like to keep confidential the salary they make, the injuries they suffered, or the price they agreed to pay under a contract, but when these things are vital to claims made in litigation they must be revealed.

Id. at 546-47 (citations omitted).

The court observed that the parties' joint motion had made "no effort to justify the claim of secrecy;" the motion simply had asserted secrecy "mostly on the basis of the agreement but partly on the ground that these are commercial documents." Id. at 546. The court stated, somewhat tersely, "That won't do," citing Union Oil. The court pointed out that the motion did not "analyze the applicable legal criteria or contend that any document contains a protectable trade secret or otherwise legitimately may be kept from public inspection despite its importance to the resolution of the litigation." Id. (citing Composite Marine Propellers, Inc. v. Van Der Woude, 962 F.2d 1263, 1266 (7th Cir. 1992)).

14

The Seventh Circuit has reiterated the principles of <u>Baxter</u> since. It has stated that documents that "affect the disposition of federal litigation are presumptively open to public view." <u>Goesel v. Boley Intern. (H.K.) Ltd.</u>, 738 F.3d 831, 833 (7th Cir. 2013).

Neither of the plaintiff's motions to seal contain sufficient information to justify the court granting the motion. The first motion asks the court to seal four documents designated as confidential by the defendants on the grounds that they describe the defendants' internal sanitary policies and procedures. Dkt. No. 44. It does not provide any further identification of these documents, other than calling them "exhibits." The declaration of plaintiff's counsel in support of the motion for conditional certification is at Dkt. No. 49. There are *ten* documents attached to that declaration. Dkt. Nos. 49-1 through 49-10. The clerk's office has restricted four of them: A document titled "Cut Fresh LLC Good Manufacturing Practices," dkt. no. 49-2; one titled "Cut Fresh LLC Outer Garment Policy," dkt. no. 49-3; one titled "Cut Fresh Food Safety System and Management Commitment," dkt. no. 49-5; and one titled "Cut Fresh LLC Hazard Analysis—Fresh-Cut Vegetable and Fruit Products," dkt. no. 49-6.

The plaintiff's second motion says that the plaintiff's reply brief in support of the motion for conditional certification paraphrases portions of two documents "that describe internal Cut Fresh policies and procedures to safeguard the cleanliness and safety of its produce products." Dkt. No. 62 at 1. It asks the court to "file under seal the portion of the Memorandum of Law that references non-publicly available information solely derived from documents

that Cut Fresh has designated as confidential." <u>Id.</u> at 2. The reply brief is at Dkt. No. 63. Because the plaintiff did not identify the pages or portions of the reply brief he seeks to restrict and did not file a redacted version, the entire reply brief currently is restricted from public view.

Neither motion provides detailed information explaining why public access to the documents attached to the declaration or the portions of the reply brief (whatever they may be) could harm Cut Fresh or deprive it of competitive advantage. The motions do not provide the court with enough information to determine whether there is good cause to restrict the documents (or parts of them) from public view, and a review of the reply brief indicates that there is no basis for restricting the entire brief from public view.

The court understands that the plaintiff is not the party who designated the documents or information as confidential. The plaintiff has followed part of the Rule 79(d)(3) procedure—he has explained in the motion that he is seeking to file the documents or materials under seal because of a court-approved protective order. He has not stated directly whether he supports, objects to or takes no position on the continued sealing of the documents or materials, as the rule requires, though it appears that he might support the continued restriction. The defendants—the parties that designated the documents or materials as confidential—have *not* provided sufficient facts demonstrating good cause to continue sealing the documents or materials. If the defendants believe that there is good cause to restrict these documents or materials from public view, they need to provide the court with that information.

16

Both motions ask the court to "seal" the documents or information. The court suspects that the plaintiff meant to ask the court to "restrict" the documents or information to viewing by only the parties and the court. When the court "seals" a document, that document is not viewable by anyone but the court. The court assumes that the parties themselves want to be able to access the documents.

The court will construe the motions as motions to restrict but will deny the motions without prejudice. After carefully reviewing this order and Rule 79(d)(3), either party (or the parties together) may file a motion to restrict the documents, explaining which portions of the documents the party seeks to have restricted and giving a detailed analysis of why there is good cause for the court to restrict. If a party believes that there is good cause to restrict a portion of a document—for example, some paragraphs in the reply brief in support of conditional certification—the party must submit with the motion to restrict a redacted copy marking out the portions the party believes should not be accessible to the public. The court will order that the clerk's office continue to restrict the documents for thirty days from the date of this order. If neither party has filed a motion to restrict by the end of that fourteen-day period, the court will instruct the clerk to make the documents available to the public.

17

III. **Plaintiff's Motion for Conditional Certification (Dkt. No. 45) and Plaintiff's Motion to Supplement the Record on Conditional Certification (Dkt. No. 66)**

A. <u>Parties' Arguments</u>

The plaintiff's motion for conditional certification asked the court to authorize the plaintiff to send notice of the collective action to "[a]ll employees who were involved in the processing, handling, and/or storage of produce at the Cut Fresh facility during the time period between February 9, 2018, to the present." Dkt. No. 45 at 1. The motion asked the court to send notice of the collective action to "[a]ll drivers employed by either or both of the Defendants during the same time period between February 9, 2018 to the present." <u>Id.</u> The motion itself does not mention, or request, conditional certification anywhere except in its title.

The plaintiff filed *two* briefs in support of the motion for conditional certification. Dkt. Nos. 46, 47. The brief at dkt. no. 46 has large swathes of blank space on pages 6 and 7. The brief at dkt. no. 47 does not have such blank space; it contains paraphrases from the four documents attached to dkt. no. 49 which the plaintiff asked the court to seal. The briefs otherwise are identical. Although there is a docket remark in red at dkt. no. 47 indicating that the document or attachments to it are sealed, the brief is *not* sealed and the plaintiff never has filed a motion asking the court to seal it. It appears that the plaintiff *believes* that he filed dkt. no. 47—the full, unredacted brief—under seal and that he filed a redacted version of the brief at dkt. no. 46.

18

At any rate, the brief relates that the plaintiff seeks to give notice to putative collective members of "his claim that the Defendants failed to compensate them for time spent donning required sanitary uniforms, washing their hands, and walking to the time clock," his claim "that Defendants violated the FLSA by failing to compensate them for reported breaks that were too short to constitute bona fide meal breaks" and his claim that the defendants violated the FLSA for failing to compensate drivers "for breaks that were too short to constitute bona fide meal breaks." Dkt. No. 47 at 1. The plaintiff explained that although he worked for the defendants as a sanitation employee, he and other sanitation employees "often began their workdays by processing fruits and vegetables, given that sanitation work cannot begin until all processing of fruits and vegetables for the day are completed." Id. at 5. The plaintiff said that supervisors told him that to process fruits and vegetables, he was required to wear a plastic outer garment, safety glasses, hairnet, beardnet if necessary and disposable gloves and that he was not allowed to take any of these items out of the plant. Id. He had access to these items, and could put them on only after arriving at the plant, and he'd have to put them on and walk to the time clock before he could punch in. Id. The plaintiff explained that he did not get paid until he punched in. Id.

The plaintiff indicated that he had seen his co-workers punching in and had observed that they already had their protective gear on at the time they punched in; he also said he'd never seen an employee leave the plant while still wearing the protective gear. Id. The plaintiff cited a February 25, 2021 audit

19

report confirming that there was a designated "suit up" area for handwashing and dressing and that employees removed protective outer garments before breaks, before using the toilets and before going home. Id. (citing Dkt. No. 49-1 at 5). He also cited Cut Fresh's manufacturing practices prohibiting employees from taking protective gear out of the building. Id. at 6-7 (citing Dkt. No. 49-2). He cited Cut Fresh's outer garment policy indicating governing the provision of clean outer garments and PPE at the beginning of shifts and removal of soiled items when exiting production areas. Id. (citing Dkt. No. 49-3)

The plaintiff argued that his own experiences, his observations of others, Cut Fresh's policies and the audit report all demonstrated that employees were required to don protective gear and wash their hands before they could punch in and start to be paid. Id. at 7. The plaintiff asserted that under the FLSA, employers were required to pay employees for such integral and indispensable tasks. Id. at 8. And he argued that he was similarly situated to each employee who began a shift by processing and handling produce and thus was required to don protective clothing and PPE and wash before clocking in. Id. at 10.

The plaintiff also explained that the defendants used payroll software. Id. at 11. He asserted that one version of that software, ADP, would deduct meal breaks from an employee's hours worked even if the break was less than fifteen minutes long. Id. He explained that while he and his co-workers usually took breaks of thirty minutes or more, sometimes they'd be called back to work early and would end up taking breaks of fifteen minutes or less. Id. at 11-12. He speculated that he was unlikely to be the only one who reported meal breaks of

20

fifteen minutes or less. Id. at 12. The plaintiff argued that rest breaks of five to twenty minutes must count as hours worked under the FLSA. Id. The plaintiff asserted that he was similarly situated to others whose payroll was calculated using the ADP software, because all such employees would have breaks deducted from their hours worked even if those breaks were fifteen minutes or less. Id. at 13.

The plaintiff argued that drivers for Marchese should be included in the meal break collective because in discovery, Cut Fresh and Marchese had not identified any different employees responsible for payroll. Id. at 14. Assuming the two companies used the same payroll system, the plaintiff argued that the Marchese drivers must also have had meal breaks deducted from their pay even if the breaks were less than fifteen minutes. Id. He asked the court to determine that Cut Fresh and Marchese constituted a single employer for purposes of the FLSA. Id. at 16. And he argued that he was similarly situated to the Marchese drivers on the meal break claim. Id. at 17.

The defendants opposed the motion to give notice to the two groups the plaintiff had identified. Dkt. No. 59. They argued that the plaintiff had failed to make even a modest showing that defendants had a pattern or practice of failing to pay the plaintiff or proposed collective members. Id. at 2. According to the defendants, the plaintiff failed to show a common policy, pattern or practice of failing to pay employees for time spent donning and doffing protective gear or handwashing in preparation for their duties. Id. at 3. The defendants argued that the plaintiff had relied on his own personal practices and what he

21

observed, but had failed to proffer any actual evidence. Id. The defendants

provided a declaration from Keith Kallin, a Cut Fresh food safety and quality

assurance manager, averring that employees enter the building upon arrival

and have access to an employee locker room to store personal belongings;

production employees then exit the locker room and head to the "PLANT

ENTRANCE" door across the hallway. Dkt. No. 59-1 at ¶¶7, 10. Kallin further

averred

> On the wall outside and next to the door marked "PLANT
> ENTRANCE," there is a digital time clock for hourly paid employees,
> like production and sanitation workers, to punch in. Employees use
> their own fingerprint to record their start time for work, and then
> also use their fingerprint to punch out for breaks or meals. An
> employee could not don their gloves before punching in, because of
> the fingerprint ID required for that time keeping purpose.

Id. at ¶11. According to Kallin, sanitation employees then "head to a separate

special room to don their own specialized protective gear and obtain their

sanitation equipment." Id. at ¶13. The defendants argued that the declaration

shows that "it would be impossible to perform the requisite fingerprint scan

after putting on the required protective gloves," disputing the plaintiff's

assertion in his declaration that he had seen employees punching in on the

time clock while wearing gloves (citing the plaintiff's declaration at Dkt. No. 48

at ¶¶3-6). Dkt. No. 59 at 3.

As for the unpaid meal breaks, the defendants argued that the plaintiff

had recounted only a single instance where the plaintiff himself punched out

and punched in six minutes later. Id. at 4. The defendants asserted that they

have produced all the plaintiff's punch data for the relevant period and that

Case 2:20-cv-01802-PP   Filed 08/10/22   Page 22 of 54   Document 78

one "isolated error" in three years in insufficient to support conditional certification. Id. at 10. The defendants acknowledged that the plaintiff should have been paid for that six-minute break on February 18, 2018, but argued that this was not enough evidence to support a collective action. Id. at 11-12.

The defendants argued that the plaintiff's request to include Marchese drivers in the meal claim lacked support because the plaintiff had offered no payroll records or statements from any truck drivers. Id. at 7. They asserted that Marchese drivers did not punch in and out for breaks or meal periods, they were on the honor system and thus were not similarly situated to the plaintiff or any other Cut Fresh employee. Id. at 15.

Finally, the defendants asked that if the court grants conditional certification, it require the plaintiff to modify the proposed notice to warn that opt-in members might be required to pay defendants' costs if the defendants prevail, and that the opt-in period to be shortened from sixty to forty-five days. Id. at 17-18. They argued that the sixty-day opt-in period was excessive, particularly given that all putative class members worked at stores in the same state. Id. at 18.

In reply, the plaintiff reiterated that the court should grant conditional certification for Cut Fresh employees. Dkt. No. 64 at 1. The plaintiff argued that the defendants' own declarations and policies supported the plaintiff's account that employees donned the gear before they punched in. Id. at 1-2 (citing Dkt. Nos. 59-1 at ¶¶7, 11, 12; 48 at ¶3). He asserted that the only disagreement was whether employees could punch in after having donned

gloves, and asserted that that dispute was less relevant than whether all employees were required to follow the same process (donning protective gear and washing before punching in). Id. at 3. On the meal claim, the plaintiff stated that the evidence showed that Cut Fresh programmed its software so that the time between punching out for breaks and punching in—no matter how short—was not counted. Id. at 2, 7. The plaintiff maintained that he was not required to prove a violation of the law, only to show that the putative collective members were subject to a common policy or plan that allegedly violated the law. Dkt. No. 64 at 5.

The plaintiff also argued that there was no basis for revising the proposed notice. Id. at 13-14. The plaintiff asserted that the warning about defense costs possibly being assessed to collective members would only discourage opt-ins, and that it was true that the collective members would not be assessed defense fees and costs if the plaintiff prevails on any significant issue. Id. at 13. The plaintiff argued that other courts have refused to include this language. Id. at 14 (citing Osterholt v. CorePower Yoga, LLC, No. 16 CV 5089, 2017 WL 2180483, *6 (N.D. Ill. May 18, 2017)). The plaintiff also maintained that there was no basis for cutting the opt-in period to forty-five days rather than sixty days; he asserted that counsel may need time to locate and remail notices and class members may need time to get the class notice translated. Id. at 15.

Two months after filing his reply brief, the plaintiff filed his motion to supplement the record on conditional certification. Dkt. No. 66. He argued that

nine other employees had punched back in fifteen minutes or less after they had punched out for break and were not paid for the fifteen minute or less duration of the break. Id. at ¶2. He asked the court to allow him to supplement the conditional certification record "with indisputable evidence that other Cut Fresh employees, just like Plaintiff, used time clock punches to report to Defendants breaks of 15 minutes or less, yet were not paid for such reported breaks." Id. at ¶4. Although there was no mention of this in the title of the motion, the second sentence of paragraph 5 of the motion says, in part, that "Plaintiffs are withdrawing their request to conditionally certify a collective of Marchese drivers." Id. at ¶5.

The document the plaintiff sought to provide as a supplement to the conditional certification record is a "Timecard Report" for various employees covering the months of September and October 2021. Dkt. No. 67-1. The report shows, for example, that on September 1, 2021, employee Luis Agreda punched out at 8:45 p.m. and punched back in at 9:00 p.m.—fifteen minutes later. Id. at 1. It shows that on October 1, 2021, Marina Aguilar-Vargas punched out at 11:38 p.m. and punched back in at 11:52 p.m.—fourteen minutes later. Id. at 2. It shows that on October 5, 2021, Petra Alvarez punched out at 10:00 a.m. and punched back in at 10:15 a.m.—fifteen minutes later. Id. at 3. All told, the report shows that nine employees other than the plaintiff took breaks of fifteen minutes or less.

B.     <u>Analysis</u>

"A collective action under §216(b) differs from a class action under Federal Rule of Civil Procedure 23 in that Rule 23 binds class members unless they opt out, whereas collective action members are bound under § 216(b) only if they opt in to the action by providing their written consent." <u>Franks v. MKM Oil, Inc.</u>, No. 10 CV 00013, 2012 WL 3903782, at *9 (N.D. Ill. Sept. 7, 2012) (citing <u>Ervin v. OS Rest. Servs., Inc.</u>, 632 F.3d 971, 976 (7th Cir. 2011)). Courts in this circuit "generally employ a two-phase inquiry in determining who is similarly situated and, thus, entitled to notice." <u>Brabazon v. Aurora Health Care, Inc.</u>, No. 10-CV-714, 2011 WL 1131097, at *2 (E.D. Wis. Mar. 28, 2011). "First, the court will allow notice to be sent if the plaintiff can make a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." <u>Id.</u> (citing <u>Adair v. Wis. Bell, Inc.</u>, No. 08-C-280, 2008 WL 4224360, at *3 (E.D. Wis. Sept. 11, 2008)). Second, usually after discovery, "the defendant asks the court to determine whether the opt-ins are in fact similarly situated." <u>Adair</u>, 2008 WL 4224360, at *3.

The amended complaint names two defendants: Cut Fresh and V. Marchese & Co. Both defendants and the plaintiff agree that the plaintiff worked only for Cut Fresh, not Marchese. Dkt. Nos. 6 at 1-2; 11 at ¶1. While the plaintiff's motion to supplement the record on conditional certification says that the plaintiff is "withdrawing [the] request to conditionally certify a collective of Marchese drivers," dkt. no. 66 at ¶5, it is unclear whether the

plaintiff anticipates including any Marchese employees in the meal claim collective; he has not acknowledged the defendants' claim that Marchese drivers did not clock in and out for breaks. The plaintiff's explanation for naming Marchese as a defendant "out of an abundance of caution" does not constitute the requisite factual showing to approve conditional certification. Because the plaintiff has not provided any information as to why employees of Marchese are similarly situated to him or to the members of the proposed collectives, or demonstrated that there are common policies between Cut Fresh and Marchese, the plaintiff has not made even the modest factual showing required for the first step of collective certification as to any employee of Marchese. The court will approve the motion for conditional certification of the collectives, but the plaintiff must not send notices to employees of V. Marchese.

On the other hand, the plaintiff's claims against Cut Fresh meet the minimal requirements to allow the plaintiff to send notice to Cut Fresh employees who meet the definitions of the collectives. "The Fair Labor Standards Act requires employers to pay workers for time spent donning and doffing 'integral and indispensable' safety gear." Spoerle v. Kraft Foods Global, Inc., 614 F.3d 427, 428 (7th Cir. 2010) (citing IBP, Inc. v. Alvarez, 546 U.S. 21 (2005); 29 U.S.C. §254). The plaintiff has alleged that he has been required to don protective gear, wash up and walk to the time clock prior to clocking in and beginning to be paid. He has filed a declaration averring that between 2018 and 2020, he'd seen more than 100 other production and sanitation workers punching in, already wearing their PPE. Dkt. No. 48 at ¶6. He has provided Cut

Fresh policies supporting his assertion that employees are required to don PPE before coming into the plant, and an audit report that indicated that as of February 2021 (admittedly, after the date the complaint was filed), employees were following that practice. The defendants' assertions that employees couldn't possibly don gloves before clocking in because the clock's fingerprint scanner could not then identify them, or that aprons are disposable and can be thrown away before leaving the plant, are factual disputes about the length of potentially uncompensated time and do not demonstrate that the plaintiff has failed to make the modest factual showing required for conditional certification. The court finds that the plaintiff has provided sufficient evidence to make the "modest" factual showing required for conditional certification of the donning claim.

The FLSA also requires employees to be compensated for all hours worked and "[f]ive to twenty minute rest breaks must be considered hours worked." Kasten v. Saint-Gobain Performance Plastics Corp., 556 F. Supp. 2d 941, 953 (W.D. Wis. 2008) (citing 29 C.F.R. §785.18, which states, "Rest periods of short duration, running from 5 minutes to about 20 minutes . . . must be counted as hours worked."). The plaintiff has made a modest factual showing that the payroll software used by Cut Fresh does not count as hours worked breaks less than thirty minutes and that at least nine other Cut Fresh employees may have taken breaks of fifteen minutes or less and not been paid for them in 2021 (Dkt. No. 65-1). Although the plaintiff has identified only a small number of employees who may not have been paid for breaks of less than

fifteen minutes' duration, conditional certification under §216(b) does not carry the same stringent requirements as class certification under Fed. R. Civ. P. 23. This is because unnamed class members in a Rule 23 class will be bound by the judgment unless they opt out, while §216(b) collective actions bind only those who opt in. Espenscheid v. DirectSat USA, LLC, 705 F.3d 770, 772 (7th Cir. 2013). "[T]he conditional approval process is a mechanism used by district courts to establish whether potential plaintiffs in the FLSA collective action should be sent a notice of their eligibility to participate and given the opportunity to opt in to the collective action." Ervin v. OS Rest. Servs., Inc., 632 F.3d 971, 976 (7th Cir. 2011).

Because the plaintiff's allegations concern company-wide practices that would affect a collective of similarly situated employees, the court will grant conditional certification of the two collectives of Cut Fresh employees. The court will require the plaintiff to modify the proposed notice, however, to clearly reflect that the collectives include only Cut Fresh employees.

The court will grant the defendant's request (dkt. no. 59 at 18) and require the plaintiff to modify the proposed notice from "there will be no attorney's fees or costs chargeable to you from plaintiff's lawyers" to "If you do not prevail on your claim, court costs and expenses may possibly be assessed against the class." Fosbinder-Bittdorf v. SSM Health care of Wisconsin, Inc., No. 11-cv-592-wmc, 2013 WL 3287634, at *7 (W.D. Wis. Mar. 21, 2013). While it is a correct statement of the law that there will be no fees or costs assessed from the *plaintiffs'* lawyers, as Judge Conley pointed out in Fosbinder-Bittdorf,

29

that phrasing could mislead a collective member by failing to acknowledge that "if plaintiffs lose, the opt-in class members could be responsible for defendant's attorney fees." Id. The court also expects that if any potential collective member contacts the plaintiff's attorney to discuss opting in, counsel will inform that individual of that possibility.

Finally, the court denies the defendants' request to shorten the opt-in period to forty-five days. The plaintiff's suggested opt-in period of sixty days is, as the plaintiff asserts, reasonable; it will give the plaintiff a bit more time to address returned notices and potential members a bit more time to process the information contained in the notice.

## II. Plaintiff's Motion to Certify Class (Dkt. No. 70)

### A. Parties' Arguments

Finally, the plaintiff asks the court to certify him as representative, and the Previant Law Firm as class counsel, for a Rule 23 class. Dkt. No. 70. The proposed class consists of "[a]ll hourly employees employed by Defendant Cut Fresh, LLC who during the time period between November 6, 2018 and the present either (a) worked as a production or maintenance employee for Cut Fresh; or (b) punched in after a meal break less than 30 minutes after punching out for the break." Id. at 1.

The plaintiff asserts that the February 2021 audit shows that the defendants employed between 117 and 127 "production and maintenance employees" at that time. Dkt. No. 71 at 3. He says he obtained through discovery eleven batches of time records; he reviewed only the first of those

30

eleven batches, and only the records for employees whose names started with the letters A through K, and found forty employees in addition to the plaintiff who punched out for meal breaks and punched in less than thirty minutes later but had the meal breaks deducted from their hours worked. Id. The plaintiff reiterates that Cut Fresh uses ADP software and asserts that it never has programmed the payroll software "so that if a reported meal break is sufficient[ly] short, the meal break would not be deducted from the employee's hours worked." Id. at 4. He also asserts that an employee in the Cut Fresh HR department would review employees' time clock punches. Id. at 5.

The plaintiff asserts that Cut Fresh has admitted "that it has known all along that its employees should be paid for their time spent putting on PPEs." Id. at 11-12. He asserts that he and other sanitation employees are subject to the same practices as production employees "because when they started their shifts by processing fruits and vegetables, they donned the same PPEs as production employees." Id. at 3. He explains in detail where PPE was located and the donning process. Id. at 3-4. He reiterates that he has seen hundreds of employees like him, who donned PPE before clocking in. Id. at 4.

The plaintiff says that he seeks to bring a wage claim under Wis. Stat. §109.03(5), id. at 5, and that the law authorizes him to bring such a claim as a class action, id. at 6. He argues that the claim is timely, id. at 6-7, and that it meets the Rule 23(a) requirements, id. at 7. Before getting to those requirements, however, the plaintiff

> acknowledges that he has made several changes to the class definition when compared to the First Amended Complaint: He has

31

changed the beginning date of the class period, removed Marchese from the class definition, and simplified the descriptions of the class in the class definition: Because all production and maintenance employees for Cut Fresh would put on PPEs before processing any fruits or vegetables, the first subclass can more simply be described as all production and maintenance employees. Because Cut Fresh's ADP software would not count as hours worked and would not pay reported meal breaks that were less than 30 minutes long, while employees would not punch out for paid breaks, the second subclass can more simply be described as those who reported sub-30 minutes meal breaks without the separate qualifier that the breaks were unpaid. (Cut Fresh Dep. Pg. 52-54, 63) The Court should allow Plaintiff to modify and simplify his class definitions to suit the theories of the case when the ultimate responsibility to define the class is entrusted to the Court rather than left to the parties. See Fed Rule Civ. P. R. 23(c)(1)(B). A Court can modify the class definition, such as by creating a new subclass, without requiring amendment of pleadings. *Philips v. Asset Acceptance Inc.*, 736 F.3d 1076, 1081 (7th Cir. 2013).

Id. at 8.

Turning to the Rule 23(a) requirements, the plaintiff asserts that both subclasses—the donning subclass and the meal break subclass—are sufficiently numerous. Id. at 10-11. He says that the audit shows that there were "between 110-120 production employees and 7 maintenance employees" employed in "early 2021," id. at 10; while he does not link this number to one of the subclasses, the court assumes he finds it relevant to the donning subclass. He reiterates that the sampling of time records he's reviewed to date show that some forty employees "whose last names ended in letters between a and k" took uncompensated breaks of less than thirty minutes, so the court may assume that the meal break subclass would be well over that number. Id. at 11.

The plaintiff argues that there are common questions of law on both claims; he says that on the donning claim, there is no dispute that the time spent donning PPE was compensable and that the only issue will be whether Cut Fresh had sufficient knowledge that the employees were donning the PPE before they punched in. Id. at 11-12. He cites to the Wisconsin statutes and regulations governing that issue. Id. As for the meal break subclass, he argues that the common questions there will be whether meal breaks of less than thirty minutes count as hours worked under Wisconsin law and whether Cut Fresh had knowledge of when its employees clocked out and in. Id. at 12.

The plaintiff argues that his claims are typical of the class claims. He says that even though he was a sanitation employee, whenever sanitation employees started their workdays by processing fruits and vegetables they would don the same PPE worn by production employees, "not the additional PPEs worn by sanitation employees." Id. at 15-16. And he says the same ADP payroll software was used for him and for the meal break subclass members, and that all of them had meal breaks of less than thirty minutes deducted from their hours worked. Id. at 16.

The plaintiff asserts that he is an adequate class representative because he can supply factual testimony about what items employees donned before clocking in and how frequently. Id. at 16-17. He says pursing the back wage claims will not result in any concrete, adverse harm to current Cut Fresh employees. Id. at 17. With regard to certification of class counsel, the plaintiff argues that proposed class counsel filed the case, knows the Wisconsin wage

33

law and the law regarding class certification, has been able to devote the necessary resources to prosecute the lawsuit and is very experienced in prosecuting the types of claims raised in the case. Id. at 17-18.

The plaintiff asserts that common questions of law predominate over individual ones. Id. at 19. He asserts that once the court determines which pieces of PPE employees donned as a widespread practice, it can "use representative testimony to determine how much time it would take employees to don those PPEs." Id. at 20. He says that the meal break claim is similarly susceptible to common mathematical calculations. Id.

The plaintiff asserts that a class action is superior to the court determining the same questions of liability in multiple proceedings. Id. at 21. He asserts that class members will have little interest in individually controlling the litigation because the cost of litigation will exceed individual recoveries. Id. at 22. He argues that concentrating the claims in the Eastern District of Wisconsin is "desirable" because Cut Fresh resides here. Id. at 23. Finally, the plaintiff argues that it will not be difficult for the court to manage the litigation. Id.

The defendants protest that the plaintiff "fails to even come close to adequately representing the class he proposes." Dkt. No. 74 at 1. Before addressing the class certification requirements, the defendants argue that the court must immediately dismiss V. Marchese as a defendant because the plaintiff made no mention of Marchese employees in defining the class and admitted in his brief that he had removed Marchese from the class definition.

34

Id. at 1- 2 (citing Dkt. No. 71 at 8). The defendants maintain that it is "clear Plaintiffs are removing V. Marchese from the case and focusing solely on employees of Cut Fresh," without amending the pleadings; they say they would agree to the plaintiff's modification of the class, but only if Marchese is dismissed as a defendant. Id. at 2.

Turning to the Rule 23 requirements, the defendants point out that the plaintiff has asked the court to certify a class of "production and maintenance employees," and they assert the plaintiff was neither. Id. They assert that he never worked alongside first shift production or maintenance employees and speculate that because he worked the night shift, the plaintiff "likely rarely even saw the members of his proposed class except in passing at shift change." Id. They conclude that the plaintiff is "entirely inadequate as a representative" of the class he proposes. Id. at 3.

Next, the defendants point to the evolution of the plaintiff's definition of the class between the motion for conditional certification filed in October 2021 and the definition in the current Rule 23 motion. Id. They reiterate that the plaintiff, as a third-shift sanitation worker who never worked as a production or maintenance employee, cannot adequately represent the class he has defined, asserting that it is "undisputed sanitation workers were required to wear different PPE than production and maintenance employees." Id. at 4. They assert that it is undisputed that employees donned PPE in the "Sanitary Control Room, which could only be accessed after an employee punched in." Id. They assert that the plaintiff claims that a butcher coat, disposable apron and

35

hair net were donned before the clock-in process, contending that the plaintiff presented no evidence of that fact. Id. They assert that even if the plaintiff had presented evidence that these items were donned before clocking in, the Seventh Circuit has held that donning such items is *de minimis*. Id. at 5. (Later in the opposition brief, the defendants cited Mitchell v. JCG Ind., Inc., 745 F.3d 837 (7th Cir. 2014) for this proposition. Id. at 11.) They conclude that the plaintiff "cannot identify an actionable cause of action to be brought by the group to which he does not actually belong." Id. at 5.

The defendants also accuse the plaintiff of attempting to mislead the court by misquoting the testimony of Cut Fresh's CFO. Id. at 8. The defendants concede that Cut Fresh provided production and maintenance employees a clean butcher's coat, disposable apron, hairnet and beard net (if needed) at the beginning of each shift, but they assert that "this is not considered the entirety, or evet the primary portion of, their 'PPE.'" Id. And the defendants argue that there is no evidence that the employees donned even these items before they punched in. Id. They quote extensively from Keith Kallin's declaration, indicating that the "real" donning was done after the employees punched the time clock. Id. at 9-10.

The defendants also argue that the plaintiff has not shown that the defendants had knowledge of, or perpetuated a common policy or practice of, failing to pay employees for donning protective gear or washing their hands. Id. at 12. They assert that the plaintiff offered nothing but his own observations and "self-serving" statements. Id. The defendants assert that they have filed

36

declarations showing that employees were paid for donning (and doffing) protective gear. Id. at 12-13. They reiterate that because the punch clock is a fingerprint scanner, it would be impossible to perform the fingerprint scan if the employee were wearing the required protective gloves. Id. at 13.

The defendants focus their specific Rule 23 arguments on Rule 23(a)(4)—adequacy of representation—reiterating that the plaintiff is not an adequate class representative for the class he proposes. Id. at 14-16. They also emphasize Rule 23(a)(3), typicality, arguing that the plaintiff is not typical of the proposed class because he does not share the characteristics of the class. Id. at 16-17.

The plaintiff replies that "[t]he Court should deny Cut Fresh's objection to the changes made by the Plaintiffs' Motion for Class Certification to the class definition alleged in the First Amended Complaint." Dkt. No. 75 at 2. While conceding that he has eliminated Marchese employees from both subclasses (as well as eliminating "from the donning subclass employees who never worked as production or maintenance employees"), he objects to the court dismissing Marchese as a defendant because "Marchese continues to face joint and several liability for Cut Fresh's liability to Cut Fresh employees" under a theory that Cut Fresh and Marchese are so integrated that they constitute a single employer. Id. at 2-3. The plaintiff says that because he continues to assert that Marchese is jointly and severally liable for the wages and penalties owed to him and other Cut Fresh employees, the court has no basis for dismissing Marchese as a defendant. Id.

The plaintiff asserts that he is a member of the meal break subclass because that class is composed of all hourly employees; it is not limited to production and maintenance employees. Id. at 3. He rejects what he perceives to be the defendants' arguments that because he wasn't present when first- and second-shift employees took their meal breaks, he cannot adequately represent them. Id. at 3-4. He says that he is relying on the discovery, not his observations, to show that Cut Fresh calculated employees' pay by using their punch times and that the time clock did not identify instances where employees took breaks of less than thirty minutes. Id. at 4. He asserts that his meal break claim is typical because it was the payroll software, not individual supervisors, that determined whether to deduct meal breaks of less than thirty minutes. Id.

As for the donning subclass, the plaintiff accuses the defendants of "grossly misrepresent[ing] the record to the Court." Id. at 5. He says that because Cut Fresh classified his job as "maintenance," he *did* see maintenance employees donning PPE at the beginning of their shifts, reiterating that he had seen more than 100 other employees donning PPE before punching in. Id. He reiterates that he started his day by processing fruits and vegetables and that he donned the same PPE as production employees "during each day of his final six weeks of employment, as well as about five times per month in 2019 and earlier in 2020." Id. He insists that "[o]n each of these days [he] would be entitled to the same recovery as other class members" if the class prevailed. Id. He argue that Cut Fresh itself listed his job as maintenance, and that Cut

38

Fresh admits that he sometimes worked as a production employee doing production duties. Id. at 6. And he says that if it were true that he was not a member of the lass he proposed, "the Court can address it by amending the definition of the donning subclass to include all hourly employees who perform the job duties of (rather than worked as) production or maintenance employee, a group that would clearly include [the plaintiff]." Id.

The plaintiff says that he typically started work no later than 7:00 p.m. and stopped no earlier than 6:00 a.m., which meant that his shift would overlap "with the vast majority of his fellow employees either on the front end after 7 p.m. . . . or on the back end before 6 a.m. . . . ." Id. at 7. He says that employees must remove the gloves they just donned to punch in, and he says that he is not claiming that Cut Fresh "should be charged with knowledge that its employees would don their gloves before punching in," so the defendants' argument that donning gloves before punching in is illogical is not relevant to his certification as class representative. Id. at 8.

As for the typicality of the donning claim, the plaintiff asserts that the defendants are inviting the court to prematurely decide whether the Cut Fresh employees followed a widespread practice of donning PPE before punching in. Id. at 9. The plaintiff disputes that case law requires him to present a cause of action common to the class. Id. at 9-10. He disputes the defendants' interpretation of Kallin's declaration. Id. at 10-11. He asserts that many of the defendants' other arguments are premature defenses to the actual, substantive

39

claims and argues that the cases they cite, including <u>Mitchell</u>, are distinguishable. <u>Id.</u> at 11-13.

B.   <u>Analysis</u>

Class certification requires the plaintiff to establish that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Additionally, the plaintiff must show that one of the criteria under Fed. R. Civ. P. 23(b) is met. The plaintiff must meet his burden of showing that the prerequisites of class certification are met by a preponderance of the evidence. <u>Chi. Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chi.</u>, 797 F.3d 426, 433 (7th Cir. 2015).

The plaintiff asks the court to certify a class of all hourly employees employed by Cut Fresh between November 6, 2018 and March 4, 2022 who either worked as a production or maintenance employee or punched in after a meal break less than 30 minutes after punching out for the break. Dkt. No. 70.

1.   *Numerosity*

A plaintiff seeking class certification must show that the proposed "class is so numerous that joinder of all members is impracticable." <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338, 349 (2011); Fed. R. Civ. P. 23(a). "While 'impracticable' does not mean 'impossible,' a class representative must show 'that it is extremely difficult or inconvenient to join all the members of the

40

class.'" Anderson v. Weinert Enters., Inc., 986 F.3d 773, 777 (7th Cir. 2021) (citing 7A C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE §1762 (3d ed.)). It is not enough to allege that a class action would make the litigation easier for a plaintiff. Id.

The plaintiff claims to have identified at least forty employees other than himself who had "punched out" for breaks less than thirty minutes—the meal break subclass. Dkt. No. 71 at 11. The plaintiff has explained that he looked through one batch of time records, and in that batch looked only through employees whose surnames began with the letters A-K. For the donning subclass, the plaintiff pointed to the audit report to argue that in February 2021, there were over 117 production and maintenance employees.

The Seventh Circuit has acknowledged that "[its] cases have recognized that 'a forty-member class is often regarded as sufficient to meet the numerosity requirement.'" Anderson, 986 F.3d at 777 (quoting Orr v. Schicker, 953 F.3d 490, 498 (7th Cir. 2020)). The court also has said, however, that "a class of 40 or more does not guarantee numerosity." Id. (citing Pruitt v. City of Chi., 472 F.3d 925, 926 (7th Cir. 2006)). "The key numerosity inquiry under Rule 23(a)(1) is not the number of class members alone but the practicability of joinder." Id. To determine the practicability of joinder, the court must evaluate "the nature of the action, the size of the individual claims, and the location of the members of the class or the property that is the subject matter of the dispute." Id. (citing 7A, WRIGHT & MILLER at §1762).

In Anderson—a case involving the plaintiff's counsel—the district court had determined that the size of the class of seasonal roofing company employees was thirty-seven and had concluded that the plaintiff failed to show that joinder of the thirty-seven employees in a single lawsuit would be impracticable. Id. at 776. The trial court held that the plaintiff "had not identified any difficulty in locating or contacting potential class members" and had found that "all but two of the potential class members lived 'within a 50-mile radius in the Eastern District of Wisconsin.'" Id. The Seventh Circuit characterized the court's finding as an illustration "that the class lacked the geographical spread that other courts have found rendered joinder impracticable." Id. The trial judge also had concluded that the fact that any one successful plaintiff would receive only a small damages award under Wisconsin law did not eliminate that plaintiff's incentive to sue, because the law allowed recovery of attorney's fees and costs, and because "the numerosity requirement focuses on whether joinder would be impracticable, not whether each potential class member could bring a separate lawsuit." Id.

The Seventh Circuit began by noting that the plaintiff's putative class of thirty-seven came "close to crossing the benchmark numerosity threshold," but then looked more deeply into the "circumstances of the likely class members and the nature of the claim at issue under Wisconsin law," and concluded that the plaintiff had not satisfied the numerosity requirement. Id. at 777. It noted that the district court had considered "the proposed class's geographic dispersion, overall size of the class, small dollar amounts involved with each

42

individual claim, and [the plaintiff's] ability to easily contact the class members." Id. The appellate court recounted that all but two of the class members lived within a fifty-mile radius of the courthouse where the plaintiff had filed suit and that the plaintiff had presented no evidence showing that coordinating with the two out-of-state class members would be so difficult that it would render joinder impracticable. Id. The appellate court also found that the trial judge did not abuse his discretion "in acknowledging that statutorily authorized attorneys' fees would lower the barrier to suit caused by the small damage awards at stake in the case." Id.

At the conclusion of the Anderson decision, the Seventh Circuit explained:

> Our holding imposes no immovable benchmarks for meeting Rule 23(a)'s numerosity requirement. Though we have recognized that 40 class members will often be enough to satisfy numerosity, in no way is that number etched in stone. The controlling inquiry remains the practicability of joinder. Some classes may involve such large numbers of potential members that volume alone will make joinder impracticable. In other circumstances, it may be that smaller classes than the one proposed here will face such high barriers to joinder that the impracticability required by Rule 23(a)(1) will exist. The inquiry is fact and circumstance dependent, and future cases will require this careful line drawing.

Id. at 778.

Although the Seventh Circuit decided Anderson in January 2021, and the plaintiff did not file the instant motion for class certification until March 2022, the plaintiff does not cite Anderson in his motion. Dkt. No. 71. The facts the plaintiff cites in support of his argument that he has met the numerosity requirement are as follows:

43

Here, a report of an audit conducted by Primus of Cut Fresh's fruit and vegetable processing operations stated that as of early 2021 Cut Fresh employed between 110-120 production employees and 7 maintenance employees. (Ho Dec. Ex. 1, pg. 1-2) The class of production and maintenance employees employed by Cut Fresh easily satisfies the numerosity requirement even if the Court does not account for employee turnover that occurred between 2018 and the present, which is likely to increase the class size even more.

Records produced by Cut Fresh also show, for just the sample of records for the time period between late August and early November of 2021 for employees whose last names ended in letters between a and k, that 40 employees other than Named Plaintiff punched in after a break less than 30 minutes after they punched out for the break. (Ho Dec. Ex. 2) Based on this sample, and that the total population of Cut Fresh production and maintenance employees is at least 127, the Court can reasonably infer that during the time period between December 7, 2018 to the present, well over 40 Cut Fresh employees punched in after a meal break less than 30 minutes after they punched out for the meal breaks. The proposed meal break subclass therefore also satisfies the numerosity requirement.

Id. at 10-11.

The defendants did not argue that the plaintiff had not met the numerosity requirement of Rule 23(a)(1), but the court concludes that he has not done so. The plaintiff has done nothing more than assert that the putative meal break class has at least forty, and likely more, members and that the putative donning class may have as many as 127 members. He has not discussed whether joinder—under Rule 20(a) plaintiffs may be joined if they assert a joint and several right to relief and have any questions of law or fact in common—would be practicable. He has not discussed the geographic dispersion of the class (although the defendants asserted in their brief, in attempting to convince the court to reduce the notice period for the collective, that all putative class members worked at stores in the same state). Perhaps

44

the putative class members, like the ones in <u>Anderson</u>, all live within 50 miles of the Eastern District. Perhaps they are scattered in several states. But the plaintiff has not provided this information. In discussing his assertion that class litigation is superior to individual litigation, the plaintiff has talked about the likely small dollar recovery for any individual donning plaintiff. Dkt. No. 71 at 22 (asserting that the litigation would require thousands of dollars in attorney time, whereas damages on an individual donning or meal break claim likely would be in the hundreds of dollars per year). But as in <u>Anderson</u>, Wis. Stat. §109.03(6) allows a prevailing party to recover costs and fees, and as the <u>Anderson</u> court explained, the amount of likely recovery is not a factor in determining numerosity. The plaintiff has not discussed the relative ease or difficulty that he would have in contacting the putative class members.

It may be that joinder is impracticable, but the plaintiff has not made even a "sparse evidentiary showing" to show as much. <u>Anderson</u>, 986 F.3d at 778. The court will give the plaintiff the opportunity to amend the motion for class certification to address the numerosity standard set out in <u>Anderson</u>.

2. <em>Common Questions of Law and Fact</em>

The second prerequisite for class certification is whether "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "The claims must depend upon a common contention that is capable of class-wide resolution." <u>Chi. Teachers Union</u>, 797 F.3d at 434 (citing <u>Dukes</u>, 564 U.S. at 359). It is not enough to claim that all members of the proposed class suffered an injury as the result of the same violation of law. <u>Id.</u> at 2551.

45

The plaintiff's claim that the defendants do not compensate employees for time spent donning and doffing PPE results from alleged company-wide procedures that potentially affect all employees at the Cut Fresh facility who must wear PPE to perform their duties. The defendants concede that the procedures for PPE donning and doffing are intertwined with when and how the employees record their hours. Dkt. No. 74 at 8-9. The dispute centers around what items constitute PPE and whether the time spent donning and doffing is *de minimis*. Id. at 8-11. The answer to these questions hinges on the particular facts of the case; it is premature for the court to consider and weigh those facts in determining whether the plaintiff has met the commonality requirement.

The plaintiff contends that the meal break claim is the result of both individual supervisors requiring employees to return to work early and Cut Fresh's utilization of a payroll software program that does not include breaks of less than thirty minutes in computing an employee's hours worked (and thus, the employee's compensation). Dkt. No. 71 at 14. The defendants have not disputed the issue of commonality. The court concludes that there are questions of law in common for members of the proposed class (and for each subclass) and that a successful resolution of either claim would benefit all the proposed class members. The plaintiff has met the commonality requirement.

3.    *Typicality*

The typicality prerequisite is satisfied if the plaintiff's claim "arises from the same event or practice or course of conduct that gives rise to the claims of the other class members." De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d

46

225, 232 (7th Cir. 1983) (quoting H. NEWBERG, CLASS ACTIONS §1115(b) at 185 (1977)). The typicality requirement may be satisfied despite the existence of factual distinctions between the named plaintiff's claims and the claims of the other class members. Id.

The named plaintiff alleges that Cut Fresh did not adequately compensate him for breaks shorter than thirty minutes nor for time spent donning and doffing PPE. For the meal break claim, he asserts that the defendants had no policy requiring employees to take a full thirty minutes for lunch and that the software the company used for payroll calculated compensation based on punch-out and punch-in times but did not include in hours work breaks that were less than thirty minutes long. For the donning claim, he asserts that the defendants require production and maintenance employees to don PPE before clocking in.

The defendants spill much ink on their insistence that the plaintiff "was a 3rd shift sanitation worker and never worked as a production or maintenance employee." Dkt. No. 74 at 4. But the defendants admit that the named plaintiff did perform some of the duties of a production worker. Id. at 15. In their brief in opposition to plaintiff's motion for conditional certification, the defendants asserted that "[the named plaintiff] worked more than one position at Cut Fresh. [The plaintiff] worked both on the floor and in sanitation—often times on the same day." Dkt. No. 59 at 4.

The defendants focus on semantics. The fact that the plaintiff's job title was "sanitation" does not address the question of whether he ever performed

47

tasks that required him to don the types of PPE worn by production and maintenance employees. The plaintiff has repeatedly asserted that he often started a shift by cleaning produce, which required him to wear production PPE; the defendants have not disputed that fact. That means that the plaintiff performed tasks that subjected him to the same company-wide policies and procedures that affected members of the proposed class. The plaintiff has met the typicality requirement.

### 4. *Adequacy*

Rule 23(a)(4) provides that a class certification requires that "the representative parties will fairly and adequately protect the interests of the class." The adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." Howard v. Cook Cty. Sheriff's Office, 989 F.3d 587, 609 (7th Cir. 2021) (quoting Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 625 (1997)). The requirement "also screens for conflicts of interest among class members because the same representative parties cannot adequately represent class members with divergent interests." Id. (citation omitted). But the possibility of a trivial intra-class conflict may materialize does not prevent class certification. Id.

> To be an adequate representative, "[a] named plaintiff must be a member of the putative class and have the same interest and injury as other members." *Beaton* [*v. SpeedyPC Software*], 907 F.3d [1018] at 1027 [(7th Cir. 2018)] (citing *Conrad v. Boiron, Inc.*, 869 F.3d 536, 539 (7th Cir. 2017)). The "representative might be inadequate if he is subject to a substantial defense unique to him." *Id.* (citing *CE Design Ltd.* [*v. King Architectural Metals, Inc.*], 637 F.3d [721,] at 726, 728 [(7th Cir. 2011)]). "Conflicts of interest, as distinct from differences in entitlements, create an issue of adequacy of

48

representation by requiring the class representative to choose between competing class members." *Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 702 F.3d 364, 372 (7th Cir. 2012).

<u>Santiago v. City of Chi.</u>, 19 F.4th 1010, 1018 (7th Cir. 2021).

The defendants have not identified any conflicts of interest between the plaintiff and other class members or among class members. Rather, they argue that the named plaintiff "has little to nothing in common with the rest of his proposed class." Dkt. No. 74 at 15. The defendants also reiterate their arguments against typicality. <u>Id.</u> at 16. They argue the plaintiff was not a production or maintenance worker and that he did not work the same shifts as the other class members. They assert that the plaintiff "likely lacks sufficient personal knowledge . . . to represent or assert the rights of other employees who may be very differently situated than he is." <u>Id.</u> at 16-17.

The defendants arguments go to typicality and the court already has concluded that the plaintiff has met that requirement. The focus of the adequacy requirement is whether the plaintiff has conflicts of interest that prevent him from representing the class, as well as whether there are conflicts among the class members. The defendants have not alleged any such conflicts. The plaintiff has met the adequacy requirement.

    5. *Rule 23(b)(3)*

If a plaintiff meets the Rule 23(a) requirements, the court must determine whether the plaintiff has satisfied at least one of the requirements of Rule 23(b). The plaintiff asserts that he has satisfied Rule 23(b)(3): "questions of law or fact common to class members predominate over any questions affecting

49

only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Dkt. No. 71 at 18-19 (quoting Fed. R. Civ. P. 23(b)(3)).

> Rule 23(b)(3) permits class certification only if the questions of law or fact common to class members "predominate" over questions that are individual to members of the class. There is no mathematical or mechanical test for evaluating predominance. See 7AA WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1778 (3d ed. 2011). The Supreme Court has discussed predominance in broad terms, explaining that the Rule 23(b)(3) "inquiry trains on the legal or factual questions that qualify each class member's case as a genuine controversy," with the purpose being to determine whether a proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 . . . (1997). While similar to Rule 23(a)'s requirements for typicality and commonality, "the predominance criterion is far more demanding." *Id.* at 623-24 . . . .

> Rule 23(b)(3)'s predominance requirement is satisfied when "common questions represent a significant aspect of [a] case and … can be resolved for all members of [a] class in a single adjudication." WRIGHT & MILLER, *supra*, § 1778. Or, to put it another way, common questions can predominate if a "common nucleus of operative facts and issues" underlies the claims brought by the proposed class. *In re Nassau County Strip Search Cases*, 461 F.3d 219, 228 (2d Cir. 2006), quoting *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 299 (1st Cir. 2000). "If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question." *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005). Individual questions need not be absent. The text of Rule 23(b)(3) itself contemplates that such individual questions will be present. The rule requires only that those questions not predominate over the common questions affecting the class as a whole.

50

Messner v. Northshore University HealthSystem, 669 F.3d 802, 814-15 (7th Cir. 2012). Rule 23(b)(3) does not require common results for members of the class. Id. at 819.

The plaintiff alleges that two subclasses of Cut Fresh Employees did not receive compensation because of the defendants' company-wide policies that violated Wis. Stat. §103.02 and §109.03(1) and (5). The defendants did not respond directly to the plaintiff's Rule 23(b)(3) arguments. Throughout their opposition brief, they dispute the *merits* of the plaintiff's claims—they assert that their evidence shows that employees donned PPE after clocking in, they argue that items such as butcher coats and disposable aprons are not PPE, they argue that the plaintiff cannot show that the defendants were directing employees to take short meal breaks or knew it was happening, they argue that the plaintiff cannot prove a pattern or practice of failing to pay employees for donning PPE or that the defendants had knowledge that employees were clocking back in less than thirty minutes after breaks. These arguments do not address whether common questions predominate over individual ones or whether a class action is superior to other methods of adjudicating the controversy.

The closest the defendants come to addressing predominance is in their argument that the plaintiff is asking the court to certify a different class than the one he identified in the amended complaint. They argue that without evidence that the defendants or their management were directing employees to take short, unpaid meal breaks or that they knew employees were doing so

51

"apart from the timecard entries," a case-by-case determination is required. Dkt. No. 74 at 8. This thin argument does not demonstrate that common questions do not predominate. The evidence the plaintiff needs to prove the donning claim—both for himself and for class members—will be the company's policies, testimony from employees and supervisors and perhaps payroll records. The evidence that the plaintiff will need to prove the meal breaks claim will be testimony from people familiar with the payroll software, time records, testimony from employees and supervisors. While different employees likely were supervised by different managers, the type of evidence needed will be the same. One can imagine outliers—perhaps a disabled employee was allowed to use a different donning procedure than non-disabled employees. But the plaintiff has alleged a common nucleus of facts for each of the subclasses which could be resolved for all members in a single adjudication.

The plaintiff has met the predominance requirement.

A last note: the litigation regarding Marchese, like other parts of the litigation discussed in this order, is messy. The plaintiff has not included Marchese employees in the proposed Rule 23 class. The defendants have asserted in a brief in opposition to class certification that "V. Marchese must be immediately dismissed" and that they "would agree" to the plaintiff's modification of the class to include only employees of Cut Fresh "only in the event V. Marchese is dismissed as a party to this matter." Dkt. No. 74 at 1-2. The plaintiff has reiterated in his reply brief in support of Rule 23 certification the argument that he made in his brief in support of conditional certification of

52

the FLSA collective classes (Dkt. Nos. 46 and 47 at 16): that Cut Fresh and Marchese are so integrated that they form a single employer and that Marchese is jointly and severally liable to him and, if a class is certified, the class members. Dkt. No. 75 at 2-3.

The court has authorized the plaintiff to send notices of a collective action to two groups of Cut Fresh employees. The plaintiff has proposed and asked the court to certify a Rule 23 class of Cut Fresh employees. There may grounds to dismiss Marchese as a defendant, but the defendants have not filed a motion to dismiss. The court will not *sua sponte* dismiss a party in the context of ruling on a Rule 23 class certification motion.

The court will deny the plaintiff's class certification motion without prejudice and give the plaintiff the opportunity to file another motion that addresses the numerosity requirement.

## III. Conclusion

The court **GRANTS** the plaintiff's motion to supplement the record on conditional certification to allow him to supplement the record with information obtained from the defense after he filed the motion to compel. Dkt. No. 66.

The court **DENIES AS MOOT** the plaintiff's expedited, non-dispositive motion to compel response to request to admit. Dkt. No. 42.

The court **DENIES AS MOOT** the plaintiff's motion for leave to file reply brief. Dkt. No. 53.

The court **DENIES AS MOOT** the plaintiff's motion to strike. Dkt. No. 60.

The court **DENIES WITHOUT PREJUDICE** the defendants' requests for reimbursement of costs and fees. Dkt. Nos. 50, 55.

The court **CONSTRUES AS MOTIONS TO RESTRICT** and **DENIES WITHOUT PREJUDICE** the plaintiff's motions to seal. Dkt. Nos. 44, 62. Any party wishing to restrict these documents, or parts of the documents, may file a motion to restrict by the end of the day on **September 9, 2022**. The Clerk of Court must continue to restrict access to Dkt. Nos. 49-2, 49-3, 49-5, 49-6 and 63 pending resolution of any renewed motion. If no party files a motion to restrict by the end of the day on **September 9, 2022**, the clerk must make those documents available to the public.

The court **GRANTS IN PART** the plaintiff's motion for conditional certification. Dkt. No. 45. The court **ORDERS** the plaintiff to make the modifications to the notice described in this order.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to certify the class. Dkt. No. 70. The plaintiff may renew the motion; if he does so, he must address the <u>Anderson</u> standard for meeting the numerosity requirement.

Dated in Milwaukee, Wisconsin this 10th day of August, 2022.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

54