UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ALFREDO GOMEZ,

Plaintiff,

Case No. 20-cv-1802-pp

v.

V. MARCHESE & CO. and CUT FRESH LLC,

Defendants.

---

**ORDER GRANTING IN PART PLAINTIFF'S THIRD RENEWED MOTION TO CERTIFY CLASS (DKT. NO. 139), DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. NO. 85), DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 141) AND REQUIRING PARTIES TO FILE A JOINT STATUS REPORT**

---

On August 10, 2022, when ruling on the plaintiff's first motion for class certification, the court referred to this litigation as "messy." Dkt. No. 78 at 52. More than three years later, it remains messy. The court has spent significant time trying to pinpoint how this litigation went off the rails and to identify what needs to be done to move it forward.

The case began with the plaintiff suing defendant V. Marchese & Co. for failing to compensate him and other members of a potential class for (1) time spent donning and doffing protective clothing and (2) meal breaks in which employees punched back in less than thirty minutes after they had punched out. Dkt. No. 1 at 1. Within months, the plaintiff had filed an amended complaint, adding Cut Fresh, LLC as a defendant "out of an abundance of caution given the close relationship between the two entities, in case Cut Fresh would claim Marchese was [the plaintiff's] employer." Dkt. No. 11.

The plaintiff filed motions to compel, dkt. no. 42, to seal, dkt. nos. 44, 62, to conditionally certify the class, dkt. no. 45, to expedite correction of the record, dkt. no. 51, to file a sur-reply brief, dkt. no. 53, to strike, dkt. no. 60, to supplement the record, dkt. no. 66, and to certify a class, dkt. no. 70. In its August 10, 2022 ruling, the court commented on the unnecessary "procedural tangle," granted in part the plaintiff's motion for conditional certification and denied without prejudice the plaintiff's motion for class certification because the plaintiff had not satisfied the numerosity requirement. Dkt. No. 78.

The parties subsequently filed another flurry of motions, including the plaintiff's renewed motion to certify the class, dkt. no. 81, motions for summary judgment, dkt. nos. 85, 109, the plaintiff's motion to supplement class certification, dkt. no. 97, and the defendants' motions to extend time and reconsider, dkt. nos. 119, 134. Because the Seventh Circuit issued an intervening decision directly addressing the merits of the plaintiff's meal break claim, Wirth v. RLJ Dental, S.C., 59 F.4th 270, 272 (7th Cir. 2023), the court denied without prejudice the plaintiff's second motion for class certification and his motion for summary judgment and allowed the parties to file renewed motions addressing the impact of Wirth. Dkt. No. 138 at 23. The plaintiff renewed his motion for partial summary judgment but incorporated by reference his prior filings. Dkt. Nos. 141, 142 at 1.

Over time, as changes in the law have occurred and discovery has surfaced, the plaintiff's theories of his case have shifted.

* The plaintiff now says that V. Marchese is jointly and severally liable as a single employer under the FLSA and a single enterprise under Wisconsin law, dkt. no. 93 at 4—a theory that he did not plead in the complaint or amended complaint, dkt. nos. 1, 11.

* In the February 2021 amended complaint, the plaintiff alleged that he worked in the sanitation department, "ultimately rising to the position of a [sic] hourly paid sanitation leadman." Dkt. No. 11 at ¶5.[1] He alleged that "[i]n addition to working in the Sanitation Department, at the beginning of his shift for several days each week [the plaintiff] would clean and process fruits and vegetables rather than perform sanitation work." Id. The amended complaint described how employees were required to wear personal protective equipment and when they were required to put it on:

> 9. At the beginning of each work day one or more of the Defendants required their employees, who would be involved in processing fruits and/or vegetables during the day, to both wash their hands, and to don protective clothing and equipment including but not limited to gloves, plastic outer garments, and boots. Both the protective clothing and equipment and hand washing were integral and indispensable to prevent contamination of, and thereby ensuring cleanliness, marketability, and safety of the fruits and vegetables that the employees would process during the day, and that Marchese would then deliver to its customers.
>
> 10. At the beginning of each workday employees who would perform sanitation work at the start of their shift would be required by one or more of the Defendants to wash their hands and put on protective clothing and equipment.
>
> 11. Protective clothing and equipment that Sanitation employees must wear included more items that [sic] protective clothing and equipment that fruit and vegetable processing employees must wear. Most prominently, sanitation employees must wear aprons, which

[1] A leadman is a supervisor.

> one or more Defendants would clean on a daily basis, while performing sanitation work.
>
> 12. Hand washing by, and protective clothing and equipment worn by sanitation employees served the dual purposes of both protecting themselves from acids and other harmful chemicals that they used to clean the Defendants' fruit and vegetable processing equipment, and to prevent contamination of the fruit and vegetable cleaning equipment that they were cleaning, thereby ensuring the cleanliness, marketability, and safety of the fruits and vegetables that were processed using the equipment before their shipment by the Defendants to their customers.
>
> 13. Regardless of whether they would perform sanitation or fruit/vegetable processing work at the beginning of the day, all employees would punch in on the clock, and start to receive pay for hours worked, only after they have washed their hands and put on their protective clothing and equipment for their work that were required by one or more of the defendants.
>
> 14. If the Plaintiff started his day by processing fruits and vegetables, he would only put on the protective clothing and equipment required for fruit and vegetable processors at the beginning of his shift. He would put on additional protective clothing and equipment required for sanitation work, in particular his apron, only right before he would start performing sanitation work.

Id. at ¶9-14. The plaintiff alleged that "[w]ith his supervisor's knowledge," he and the other sanitation employees would wash their hands and put on their protective clothing and equipment before punching back in after his meal breaks, and asserted that he "never received a full 30 minutes meal break once his time spent washing his hands and putting protective clothing and equipment back on are counted as hours worked." Id. at ¶17. But now—years later—the plaintiff admits that the sanitation employees donned their additional personal protective equipment *after* punching in, dkt. no. 150 at 13, when he initially pled that sanitation employees were not compensated for time spent donning PPE before punching in, dkt. no. 1 at ¶12.

*	The plaintiff now argues that the defendants never promulgated any policy that required employees to take a full thirty minutes for their meal periods and therefore “suffered or permitted them to work” during the thirty-minute break, dkt. no. 140 at 5, when initially he pled that Marchese provided its employees with a thirty-minute, unpaid meal break but that those thirty minutes didn’t account for time spent donning PPE before punching back in or time spent finishing additional work, dkt. no. 1 at ¶¶14-21 and 11 at ¶¶15-19.

The defendants argue that the plaintiff “cannot claim now what he has not alleged in his initial pleadings.” Dkt. No. 101 at 7. But at the same time, the defendants ask the court to overlook their own failure to disclose two witnesses at the outset of the litigation. Dkt. No. 146 at 14. Meanwhile, both parties appear to agree that some additional discovery may be necessary but neither party has asked the court to revisit its scheduling order (and the discovery deadlines have long passed). Dkt. Nos. 146 at 15, 149 at 14 (the plaintiff needs collective and class members’ pay rates to compute damages).

Against that backdrop, the court turns to the plaintiff’s third motion for class certification, dkt. no. 139, the defendants’ motion for summary judgment, dkt. no. 85, and the plaintiff’s renewed motion for summary judgment, dkt. no. 141.

## I. Background

The court begins its analysis with a review of the parties’ filings and relevant court rulings because both are pertinent to the disposition of the three pending motions.

When the plaintiff filed his complaint on December 7, 2020, he sued defendant V. Marchese on behalf of himself and others similarly situated for time spent "washing hands and donning and doffing protective clothing at the beginning and end of their shifts, and for the full duration of meal breaks when they punched back in after lunch less 30 minutes after they punched out for lunch." Dkt. No. 1. at ¶1. He added that on behalf of *himself*, he sought to be compensated for "time spent for each and every one of his meal breaks that were too short to be bona fide under the FLSA and/or shorter than 30 minutes once his hand washing and donning time are taken into account, that Marchese deducted from his hours worked." Id.

Two months later, the plaintiff filed an amended complaint, adding Cut Fresh as a defendant. Dkt. No. 11 at ¶1. His theory remained the same: either or both of the defendants were liable for the time employees spent washing hands and donning and doffing protective clothing at the beginning and end of work shifts and for the full duration of the meal breaks when employees punched back in after lunch less than thirty minutes after they punched out for lunch. Id. He also sought "on behalf of [himself] time spent for each and every one of his meal breaks that were too short to be bona fide under the FLSA and/or shorter than 30 minutes once his hand washing and donning time are taken into account." Id.

In his February 2021 first amended complaint, the plaintiff alleged that he worked in the sanitation department but that, at the beginning of his shift several days a week, he would clean and process fruits and vegetables rather

than performing sanitation work. Id. at ¶5. He alleged that regardless of whether an employee worked in production or sanitation, "all employees would punch in on the clock, and start to receive pay for hours worked, only after they [had] washed their hands and put on their protective clothing and equipment for their work that were required by one or more of the Defendants." Id. at ¶13.

With respect to the meal break subclass, the plaintiff alleged that "[o]ne or more of the defendants provided to their employees a 30 minutes [sic] unpaid meal break" and that he would remove his PPE at the beginning of the break. Id. at ¶15, 16. The plaintiff did not allege that one or both of the defendants required him—or others—to return to work early. Rather, the plaintiff said that he would wash his hands and put his PPE back on before he punched in after his meal break so he never received a full thirty minutes, and he alleged that his supervisor knew that was happening. Id. at ¶17. (At some point, the plaintiff "ultimately" rose to the level of a supervisor, but the first amended complaint does not identify when that occurred. Id. at ¶5.) He further alleged that "[u]pon information and belief, because Plaintiff sometimes needed to finish additional work during his meal break, he would sometimes report to Defendants a meal break that was so short that he could not comfortably eat a meal during the reported meal break." Id. at ¶19.

The plaintiff proposed the following classes:

> All hourly employees employed by Defendants Marchese and/or Cut Fresh, LLC who during the time period between December 7, 2018 and the present either (a) washed hands and/or donned protective clothing and equipment before processing fruits and vegetables at

> the beginning of their shifts; or (b) was not paid for a meal break though his/her time clock punches reported to Marchese and/or Cut Fresh, LLC that he or she punched back in less than 30 minutes after he or she punched out for lunch.

Id. at ¶26. He identified the following questions of fact and law common to the class: (1) under DWD §272.12(2)(e), whether the activities of washing hands and donning and doffing protective clothing and equipment were indispensable to the principal activity of processing fruits and vegetables; (2) under DWD §272.12(2)(a) and (2)(c), whether meal breaks of less than thirty minutes constituted work time mandating an employer to implement a policy requiring employees to take a full thirty minutes; (3) whether the defendants' failure to compensate for hand washing, donning and doffing constituted a failure to pay wages under Wisconsin law; and (4) the question of the appropriate method for computing damages. Id. at ¶28.

On August 10, 2022, the court found that the plaintiff met the minimal requirements for conditional certification and certified a collective class of "employees who were involved in the processing, handling and/or storage of produce at the Cut Fresh facility during the time period between February 9, 2018, to the present." Dkt. No. 78 at 18, 27. The court relied on the plaintiff's allegations that he had been required to don protective gear, wash and walk to the time clock prior to punching in and that he had seen more than 100 other production and sanitation workers punching in while wearing their PPE. Id. at 27 (citing Dkt. No. 48 at ¶6). The court concluded that the defendants' assertions that employees couldn't possibly don gloves before clocking in because the clock's fingerprint scanner could not identify them with gloves on,

or that aprons are disposable and can be thrown away before leaving the plant, were factual disputes about the length of potentially uncompensated time. Id. at 28. The court further found that the plaintiff had made "a modest factual showing that the payroll software used by Cut Fresh [did] not count as hours worked breaks of less than thirty minutes and that at least nine other Cut Fresh employees may have taken breaks of fifteen minutes or less and not been paid for them in 2021." Id. (citing Dkt. No. 65-1).

As for the plaintiff's motion to certify the class under Rule 23, the plaintiff had asked the court to certify the following opt-out class:

> All hourly employees employed by Defendant Cut Fresh, LLC who during the time period between November 6, 2018 and the present either (a) worked as a production or maintenance employee for Cut Fresh; or (b) punched in after a meal break less than 30 minutes after punching out for the break.

Dkt. No. 70. The court denied that motion, ruling that the plaintiff had not satisfied the numerosity requirement articulated in Anderson v. Weinert Enters. Inc., 986 F.3d 773, 777 (7th Cir. 2021). Dkt. No. 78 at 44-45. The court concluded that the plaintiff had "done nothing more than assert that the putative meal break subclass has at least forty, and likely more, members and that the putative donning class may have as many as 127 members." Id. at 44. The plaintiff did not discuss joinder or the geographic dispersion of the class, and did not discuss the relative ease or difficulty that he would have in contacting class members. Id. at 44-45.

The court ruled on the other requirements for certification even though the plaintiff had not satisfied the numerosity requirement. Dkt. No. 78 at 45-

54. The defendant hadn't disputed commonality; the court concluded that the dispute centered around what items constitute PPE and whether the time spent donning and doffing was *de miminis*. Id. at 46. As for the meal break subclass, the court found that the dispute was about returning to work early and the use of a payroll software program that did not include breaks of less than thirty minutes. Id. The court further determined that the plaintiff had performed tasks that subjected him to the same company-wide policies and procedures as the affected members, satisfying the typicality requirement. Id. at 48. As for adequacy, it found that the defendants had not identified conflicts of interest between the plaintiff and the class. Id. at 49. Finally, the court determined that although the defendants had disputed the merits of the claims, they didn't address whether common questions predominated over individual ones and whether a class action was superior to other methods of adjudicating the controversy. Id. at 51. The court rejected the defendant's argument that a case-by-case determination was required:

> The evidence the plaintiff needs to prove the donning claim—both for himself and for class members—will be the company's policies, testimony from employees and supervisors and perhaps payroll records. The evidence that the plaintiff will need to prove the meal breaks claim will be testimony from people familiar with the payroll software, time records, testimony from employers and supervisors. While different employees likely were supervised by different managers, the type of evidence needed will be the same.

Id. at 52. At the end of the order, the court questioned why defendant V. Marchese remained in the litigation, given that the plaintiff had not included Marchese employees in the Rule 23 class. Id. at 52. The court speculated that there could be grounds to dismiss Marchese, but observed that the defendants

had not filed a motion to dismiss. Id. at 53. The court denied without prejudice the plaintiff's motion for Rule 23 certification. Id. at 54.

The court extended to December 2, 2022 the deadline for filing dispositive motions and motions for decertification. Dkt. No. 80. Three months before that deadline, on September 9, 2022, the plaintiff filed a renewed motion to certify the class. Dkt. No. 81. On October 4, 2022, the defendants filed a motion for summary judgment, asking the court to dismiss V. Marchese as a defendant. Dkt. No. 86. A month later, the plaintiff asked to supplement the class certification motion, dkt. no. 97, and to file a sur-reply brief, dkt. no. 106, and he moved for partial summary judgment on the plaintiff's individual claims, dkt. no. 109. The defendants moved to strike, asserting that the plaintiff had filed his motion for summary judgment in violation of the rule against one-way intervention. Dkt. No. 114.

On January 21, 2023, the Seventh Circuit Court of Appeals issued its decision in Wirth, 59 F.4th 270; that ruling called into question the validity of the plaintiff's meal break claim. In Wirth, a jury had awarded the plaintiff damages for the time she clocked out during shortened lunch breaks. Id. at 271. District Judge William Griesbach concluded that he had erred when instructing the jury because under Wisconsin law, an employer was not required to compensate an employee for lunch periods so long as it consistently provided the employee with a break of at least thirty minutes. Id. Judge Griesbach granted a new trial and eventually ruled that the defendant was not

liable where it consistently provided a lunch break but the plaintiff chose to return to work early. Id. at 272.

The Seventh Circuit affirmed, and the following language is particularly important to the court's analysis:

> Wirth argues that Wisconsin law imposes a bright-line rule that if an employee elects to take any break of less than 30 minutes, then the entire break period offered by the employer (here, an hourlong lunch break) must be compensated. In other words, Wirth wants to be paid not just for the portion of her lunch break during which she was clocked in, but also for the time she was clocked out and admittedly not working.
>
> Our analysis begins and ends with the plain language of the regulatory scheme, which distinguishes between compensable rest periods and non-compensable meal periods. *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1091 (7th Cir. 1999) (citing *State ex. rel. Jacobus v. State*, 208 Wis. 2d 39 . . . (1997)). The Wisconsin Department of Workforce Development provides that employees "must be paid for all time spent in physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer's business." Wis. Admin. Code, Dep't of Workforce Dev. § 272.12(1)(a)(1). Employees must also be paid for "rest periods of short duration[,]" which are defined as breaks of less than 30 minutes. *Id.* at § 272.12(2)(c)(1). Wisconsin law distinguishes rest periods from meal periods. Meal periods of 30 minutes or more during which employees are completely relieved from duty for the purposes of eating regular meals are not compensable. *Id.* at § 272.12(2)(c)(2).
>
> Wirth attempted to transform her non-compensable meal period into a compensable rest period by clocking back in after less than 30 minutes, despite what her employer provided and her employer's repeated instruction to take her full break. Wirth wants us to focus on her conduct—the fact that she elected to take a lunch break of less than 30 minutes. But this focus is misplaced. **The Wisconsin regulatory scheme focuses on what the employer provided, not what the employee elected**. Because RLJ provided 30 minutes or more during which Wirth was completely relieved from duty for the purposes of eating lunch, RLJ was not obligated under the law to pay her for the time she was off the clock.

Id. (emphasis added).

Following the issuance of Wirth, the defendants moved to strike the plaintiff's motion for class certification, dkt. no. 114, to file an expedited sur-reply brief, dkt. no. 131, and to reconsider the court's rulings on the Rule 23 certification, dkt. no. 134.

On June 19, 2023, the court issued another ruling on the pending motions, expressing frustration with the parties' continued efforts to revisit prior rulings. Dkt. No. 138 at 3. The court recounted that "[t]he plaintiff even [had suggested] in one of his motions that, if the court rules against him on an issue, he 'would be free to raise' the issue on reconsideration." Id. (citing Dkt. No. 118 at 4). The court attempted to "stop the madness" by denying the motion to reconsider and the motions for leave to file sur-replies. Id. at 22. The court recognized that the Wirth decision could impact the plaintiff's ability to satisfy the commonality and typicality requirements, so it allowed the plaintiff to file a new class certification motion that addressed each of the Rule 23 requirements under Seventh Circuit case law. Id. at 13. The court ordered the parties to brief the certification motion and summary judgment with the Seventh Circuit's Wirth decision in mind. Id. at 20-21, 23. It told the parties to "cover what they need to cover in the three pleadings allotted to them by the rules (motion, opposition, reply)—without supplements, addenda or sur-replies." Dkt. No. 138 at 21. It also asserted that the parties must "stop litigating technicalities and filing 'gotcha' pleadings." Id. at 22.

The defendants' motion to decertify was due on March 4, 2022. Dkt. No. 24. The plaintiff's and defendants' expert witness lists were due on March 31, 2022 and May 31, 2022, respectively. Id. Discovery closed on July 31, 2022. Id. The court extended the plaintiff's dispositive motion deadline to July 7, 2023. Dkt. No. 138. Since July 7, 2023, the parties have not filed motions to amend the scheduling order or extend deadlines. The plaintiff never has sought leave to further amend the amended complaint (Dkt. No. 11, filed on February 9, 2021).

Two years after the Seventh Circuit decided Wirth, the Wisconsin Court of Appeals decided Freeman v. SL Greenfield, LLC, 416 Wis. 2d 388 (Wis. Ct. App. 2025). On August 6, 2025, the plaintiff filed an eleven-page motion for leave to file supplemental authority, arguing that the Freeman decision demonstrated that the Seventh Circuit's decision in Wirth, 59 F.4th at 272, was "likely incorrect." Dkt. No. 155 at 1. The defendants disagreed, arguing that the plaintiff had failed to comply with the local rules and that Freeman did not stand for the proposition asserted by the plaintiff. Dkt. No. 156. The court denied the plaintiff's motion for leave to file supplemental authority because the motion did not comply with Civil Local Rules 7(a) and (k) (E.D. Wis.), and because the court was aware of the case and did not need further briefing on the issue. Dkt. No. 157.

In Freeman, the employer maintained a timekeeping system that rounded the clock-in and clock-out times to the nearest quarter hour under a "seven-minute" rule. Freeman, 416 Wis. 2d at 397. The plaintiff had alleged

that the rounding system meant that meal breaks lasting fewer than thirty minutes were recorded as having lasted the full thirty minutes. Id. On remand, the circuit court certified a class of senior care workers and found that the commonality requirement was satisfied because "all of the senior care employees in Wisconsin, including [the plaintiff], used the ADP system to record their work time and were subject both to [defendant's] 'seven-minute' rounding rule and its expectation that employees immediately began compensable work upon clocking in." Id.

The Wisconsin Court of Appeals rejected the employer's argument that Wis. Admin. Code §DWD 274.02(3) defeated commonality because an "on-duty meal period" is "defined as a meal period where the employer does not provide at least 30 minutes free from work." Id. at 398-99. The appellate court found that the plaintiff's claims in Freeman focused on whether the employer had violated a different administrative rule—Wis. Admin. Code §DWD 272.12(2)(c)2—and had argued that the defendant had failed to compensate employees for periods that were not *bona fide* meal periods but rather were compensable rest periods under §DWD 272.12(2)(c)1. Id. at 399. The court of appeals went as far as to say that the plain language of §DWD 272.12(2)(c)1 created a bright-line rule that a break running fewer than thirty consecutive minutes cannot be a *bona fide* meal period. Rather, under §DWD 274.02(3), an on-duty meal period is one where the employer does not provide at least thirty minutes free from work. Id. at 400.

In Freeman, the Wisconsin Court of Appeals focused on whether the question framed by the plaintiff satisfied the commonality requirement. It concluded that it did because if the employer actually provided thirty minutes free from work—"a claim that lack[ed] evidentiary support" in the record—that would have been the kind of common question with a common answer that is appropriate for resolution as a class action. Id. The court emphasized that the employer never opposed the certification motion, so the undisputed evidence in the record had established that (1) the employer was aware of the clock-in and clock-out times of its employees, (2) the employer had implemented a seven-minute rule that could result in meal periods of less than thirty minutes being recorded as periods of a full thirty minutes and (3) the employer expected that the employee would begin compensable work immediately after clocking in. Id.

As for predominance, the Wisconsin Court of Appeals pointed out that the class's claims arose from a common nucleus of facts and issues, namely the uniform ADP timekeeping system, the application of the "seven minute rule" to meal periods, the operation of the same statutes and administrative rules and the defendant's expectations that employees would immediately begin compensable work upon punching in to work. Id. at 402. In affirming the trial court's conclusions that the plaintiff had met the commonality and predominance requirements for class certification, the appellate court emphasized that certifying a class falls within the discretion of the court and it is not an error of law to disregard non-binding authority. Id. at 401. The court of appeals concluded that the circuit court had supported its conclusion that

common questions existed in the case and that the common answers would drive the resolution of the litigation. Id. at 402.[2]

The court now turns to the plaintiff's third attempt to certify the class.

## II. Plaintiff's Third Renewed Motion for Class Certification (Dkt. No. 139)

### A. Standard

District courts have "broad discretion to determine whether certification of a class-action lawsuit is appropriate." Riffey v. Rauner, 910 F.3d 314, 318 (7th Cir. 2018). "Rule 23(a) sets forth four universal requirements for class actions: 'numerosity, typicality, commonality, and adequacy of representation.'" Santiago v. City of Chicago, 19 F.4th 1010, 1016 (7th Cir. 2021) (quoting Beaton v. SpeedyPC Software, 907 F.3d 1018, 1025 (7th Cir. 2018)). The plaintiff must establish all four prerequisites by a preponderance of the evidence. Eddlemon v. Bradley Univ., 65 F.4th 335, 338 (7th Cir. 2023). In addition to meeting the four requirements, the class must satisfy one of the conditions in Rule 23(b), which allows for class certification when "questions of law or fact common to the class members predominate over any questions affecting individual members" and when a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

[2] The Wisconsin Supreme Court denied the defendant's petition for review in Freeman on February 12, 2026. Freeman v. SL Greenfield, LLC, No. 2023AP02103, 32 N.W.3d 756 (Wis. 2026).

The plaintiff argues that much of the defendants' opposition is devoted to the merits of the claims, and that the court should not consider the merits at the certification stage. That is not entirely accurate. Federal Rule of Civil Procedure 23 requires courts to rigorously analyze class certification prerequisites. See also Santiago, 19 F.4th at 1016 ("A class may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites for class certification have been met."). The certification analysis may have "some overlap with the merits of the plaintiff's underlying claim." Dancel v. Groupon, Inc., 949 F.3d 999, 1005 (7th Cir. 2019) (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350-51 (2011)). Indeed, if there are material factual disputes that bear on the requirements for class certification, the court must resolve those evidentiary disputes before deciding whether to certify the class. Bell v. PNC Bank, Nat'l Ass'n, 800 F.3d 360, 373 (7th Cir. 2015) (citing Szabo v. Bridgeport Machs., Inc., 249 F.3d 672, 676 (7th Cir. 2001)). Although certification is not a dress rehearsal for a trial on the merits, the court can evaluate evidence for the purpose of deciding whether certification is proper. Messner v. Northshore Univ. HealthSystem, 669 F.3d 802, 811 (7th Cir. 2012). In the end, the plaintiff bears the burden of showing that a proposed class satisfies the Rule 23 requirements by a preponderance of the evidence. Id.

B. Analysis

In his first certification motion (filed in March 2022), the plaintiff asked the court to certify one class that consisted of "[a]ll hourly employees employed

by Defendant Cut Fresh, LLC who during the time period between November 6, 2018 and the present either (a) worked as a production or maintenance employee for Cut Fresh; or (b) punched in after a meal break less than 30 minutes after punching out for the break." Dkt. No. 70 at 1. When it ruled on that first certification motion, the court generally treated that class as a single class, even though it contained two sub-classes. In his July 2023 renewed certification motion, the plaintiff asks the court to certify the same class: all hourly employees of Cut Fresh who, between November 6, 2018 and the present, either: (1) worked as a production or sanitation employee for Cut Fresh; or (2) punched in after a meal period less than thirty minutes after punching out for the meal period. Dkt. No. 139 at 1. But it has become clear over time that there are significant differences in the arguments the plaintiff has made, and the proof he has provided, in support of the two subclasses. The court should have analyzed the two subclasses separately in its original order, but for the most part did not. Here, the court endeavors to conduct those separate analyses.

The plaintiff argues that the first subclass addresses his claim that "employees are entitled to be paid for the time period between when they donned their first piece of protective clothing or equipment and when they punched in." Id. The court refers to this as the "donning" subclass. The second subclass addresses the plaintiff's claim that employees should have been compensated for meal breaks of less than thirty minutes because the employees were not completely relieved from duty for thirty minutes. Id. The

court refers to this as the "meal break" subclass. Although these definitions are different than the ones in the first amended complaint, the plaintiff asks the court to permit him to change the definitions without amending the amended complaint. Dkt. No. 140 at 8.

As a threshold matter, with respect to the meal break subclass, the defendants raise a concern that the plaintiff has proposed a "fail-safe" class. Dkt. No. 148 at 13.

> The problem posed by class members whose claims may fail on the merits for individual reasons is the obverse of a different problem with class definition: the problem of the "fail-safe" class: one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim. Such a class definition is improper because a class member either wins or, by virtue of losing, is defined out of the class and therefore is not bound by the judgment.

Messner, 669 F.3d at 825 (citations omitted). The defendants argue that as to the meal break subclass, the plaintiff maintains that any employee whose punch-card data shows a punch-out period of less than thirty minutes is entitled to compensation for that period. Dkt. No. 148 at 13. They say that the plaintiff "seeks to establish a class comprised of individuals whose punch data shows a punch-out period of less than 30 minutes." Id. In other words, under the plaintiff's theory, a person would qualify as a member of the meal break subclass only if that person's punch card or cards showed one or more punch-out periods of less than thirty minutes.

The defendants' concern is valid. But because in certain circumstances a plaintiff can make minor revisions to a proposed class definition to avoid the problem of a fail-safe class, the court first will determine whether the plaintiff

has satisfied the Rule 23 requirements—as to both subclasses. The court will start with the four "universal" Rule 23 requirements—numerosity, commonality, typicality and adequacy.

1. *Numerosity*

A proposed class must be large enough to make joinder impracticable. See Fed. R. Civ. P. 23(a)(1); Orr v. Shicker, 953 F.3d 490, 497 (7th Cir. 2020). "While there is no magic number that applies to every case, a forty-member class is often regarded as sufficient to meet the numerosity requirement." Mulvania v. Sheriff of Rock Island C'nty, 850 F.3d 849, 859 (7th Cir. 2017). As the court previously explained, "a class of 40 or more does not guarantee numerosity." Anderson, 986 F.3d at 777 (citing Pruitt v. City of Chicago, 472 F.3d 925, 926 (7th Cir. 2006)). "The key numerosity inquiry under Rule 23(a)(1) is not the number of class members alone but the practicability of joinder." Id. To determine the practicability of joinder, the court must evaluate "the nature of the action, the size of the individual claims, and the location of the members of the class or the property that is the subject matter of the dispute." Id. (citing 7A, WRIGHT AND MILLER, FEDERAL PRACTICE AND PROCEDURE §1762 (3d. ed.).

In the brief in support of his renewed motion, the plaintiff argues that he can show that both proposed subclasses include 200 or more members. Dkt. No. 140 at 10. He asserts that he has identified 217 employees who worked in either the production or sanitation departments for Cut Fresh between May 1, 2020 and November 17, 2021 (the donning subclass). Id. The plaintiff says that he has identified 200 hourly paid employees between the production and

sanitation departments who, between May 1, 2020 and November 17, 2021, had at least one occasion for which they punched in twenty-eight minutes or less after they punched out for the meal period (the meal break subclass). Id. He urges the court to find that each subclass contains at least 200 members. Id. at 11.

The plaintiff goes on to argue that joinder would be impracticable. He cites cases in which the Seventh Circuit has held that joining fewer than 200 individuals would be impracticable. Id. He advises that he does not have valid contact information for each class member; he argues that this makes joinder impracticable because the notices to twenty-two potential collective members were returned to him as undeliverable. Id. at 11-12. And he argues that some of the class members will be current Cut Fresh employees. Id. He asserts that there is a higher risk for a current employee to have to confront his employer by opting in rather than declining to opt out. Id.

The defendants respond that the plaintiff hasn't gone far enough to explain why joining 200 plus members makes joinder impracticable *per se*. Dkt. No. 148 at 23. The defendants point out that the plaintiff has not proffered any evidence to support his assertion that a portion of the class will be current employees reluctant to confront their employer. Id. Additionally, they assert that the plaintiff has not discussed geographic dispersion of class members. Id. at 24.

The issue is whether joinder is impracticable. "While 'impracticable' does not mean 'impossible,' a class representative must show that it is extremely

difficult or inconvenient to join all the members of the class." Anderson, 986 F.3d at 777. The plaintiff relies heavily on the size of the subclasses—the facts that at least 217 production and maintenance employees are members of the donning class and that there are over 200 members of the meal break subclass. Although "a forty-member class is often regarded as sufficient to meet the numerosity requirement," Orr, 953 F.3d at 498, forty is not a magic number and courts have denied certification of larger classes, see Anderson, 986 F.3d at 778 (noting that "a putative class over 40 is not inevitably endowed with numerosity status"). But the court agrees that joining 200+ members, for either subclass, would be unwieldy. There were no more than thirty-seven potential class members in Anderson and the Seventh Circuit made clear that its holding imposed "no immovable benchmarks for meeting Rule 23's numerosity requirement." Id.

As for impracticability, the plaintiff focuses on the fact that twenty-two notices were returned and that some class members still may be working for the defendants. In Anderson, the Seventh Circuit found that the geographic dispersion weighed against certification where all but two class members lived within a fifty-mile radius of the courthouse. 986 F.3d at 777. The plaintiff has provided no evidence or argument regarding the location of the class members. This information would have been helpful to the impracticability analysis because the plaintiff argues that the defendants are located at 600 S. Jack Marchese Way (approximately 1.3 miles from the federal courthouse) and it appears that the putative class members worked in the same location.

But even without the geographic information, the amount of the individual damages likely available to each subclass member is small, some members of the subclasses are current employees who risk retaliation in being part of a suit and the plaintiff appears to have been unable to reach at least twenty-two of the 200+ potential collective members. Because the numerosity inquiry is fact- and circumstance-dependent, the court finds that the plaintiff has satisfied the numerosity requirement as to both the donning subclass and the meal break subclass. The court emphasizes that this finding is limited to the unique facts of this case.

2. *Commonality*

Commonality requires a showing that there are questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). "A common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." Arandell Corp. v. Xcel Energy Inc., 149 F.4th 883, 892 (7th Cir. 2025). An individual question, on the other hand, is one where "the members of a proposed class will need to present evidence that varies from member to member." Id. Only one common question is necessary to satisfy Rule 23(a)'s commonality requirement. See Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 359 (2011).

a. The Donning Subclass

In opposing the plaintiff's initial motion for class certification, the defendants did not address commonality, choosing to focus on the adequacy of representation. Dkt. No. 74.

When the court ruled on the initial motion, it found that the plaintiff had satisfied the commonality requirement with respect to the donning subclass because the dispute centered around what items constituted PPE and whether the time spent donning was *de minimis.* Dkt. No. 78 at 46. In part, the court based its ruling on the plaintiff's assertions that all employees were required to don protective gear and wash their hands before they could punch in and start to be paid. Id. at 20. The plaintiff averred that he'd seen more than 100 other production and sanitation workers punching in already wearing their PPE. Dkt. No. 48 at ¶6.

As the court has explained, the parties have revisited the Rule 23 requirements in their subsequent motions, presenting additional facts. In support of his third renewed motion, the plaintiff argues that Cut Fresh can be charged with constructive notice that its employees were accessing and donning PPE before punching in and therefore that they must pay their employees starting with the time they accessed the PPE unless Cut Fresh promulgated and enforced a rule about unwanted work. Dkt. No. 71 at 13 (citing DWD §272.12(2)(a)(3)). The plaintiff insists that Cut Fresh never can make such a showing because it failed to instruct employees *not* to don the PPE before punching in. Id. The plaintiff says that Cut Fresh provided its production and sanitation employees with a clean butcher's coat, a disposable apron, a hairnet and, if appropriate, a beard net, all of which were accessed on a rolling rack in the hallway and/or next to the time clock. Dkt. No. 140 at 3. He says that supervisors trained employees regarding when to put on the PPE;

he asserts that he always put on his PPE before punching in; and he says that he has seen "more than 100 production and sanitation employees don PPEs before punching in." Id. at 3-4.

The defendants respond that whether Cut Fresh knew that employees were accessing and donning PPE prior to punching in is irrelevant because the plaintiff cannot recover for the inconsequential time spent doing so, asserting under Mitchell v. JCG Industries, Inc., 745 F.3d 837, 838 (7th Cir. 2014), that that time was *de minimis*. Dkt. No. 148 at 25. They also argue that the uncontroverted evidence revealed that the PPE donning takes place in the sanitation control room, which employees do not enter until *after* they punch in. Id. But the defendants admit that they provided the butcher's coat, apron, hairnets and beard nets at the beginning of the shift, that the supervisors trained employees when to punch in and that there was a flow to the facility in terms of when to don and punch in. Id.

The plaintiff replies that, at a minimum, the defendants have admitted that employees would gather a bump hat and the disposable apron before punching in, so the court can decide—as a common question—whether gathering the bump hat and disposable apron was a principal activity (he argues that the fact that a common defense—the *de minimis* defense—exists does not defeat certification). Dkt No. 150 at 5.

What matters at this stage is the capacity of a class-wide proceeding to generate common answers that drive the resolution of the litigation. The plaintiff has asserted, and provided some evidence, that there was a common

practice—a flow at the facility—that resulted in employees gathering some PPE, and perhaps donning it, prior to punching in with a fingerprint. Whether supervisors trained employees to don the PPE prior to punching in and whether the time it took them to do so is *de minimis* are common questions for the class.

As noted, the defendants argue that the plaintiffs cannot recover under Seventh Circuit case law because the time spent donning was *de minimis*, dkt. no. 148 at 24-25, but in Mitchell, the court did not decide the *de minimis* issue at the certification stage. In Mitchell, 745 F.3d 837, the Seventh Circuit reviewed a district court's grant of summary judgment on the plaintiff's compensation claims under Illinois state law for the donning and doffing of PPE. When considering how much time workers spent donning and doffing PPE, Judge Posner took the opportunity to "experiment with a novel approach." Id. at 842. Judge Posner asked his staff to identify the clothing/equipment used by the plant and took video of members of his staff donning and doffing the clothing/equipment. Id. It took an average of ninety-five seconds to put the PPE on and just fifteen seconds to take it off. Id. The total was 110 seconds, even though Judge Posner's staff were "inexperienced donners and doffers." Id. Although he conceded that this was not evidence but rather a way to "satisfy curiosity," Judge Posner explained that no reasonable juror could find that the workers spent half their lunch break taking off and putting on a lab coat, apron, hairnet, plastic sleeves, earplugs and gloves. Id. at 842. He concluded

that what a reasonable jury could find did not create a genuine issue of material fact on summary judgment on that particular record. Id.

So—the Mitchell court considered resolution of the factual question of whether the donning and doffing time was *de minimis* at the summary judgment stage—the stage of the litigation at which a court decides what facts are disputed and whether any disputed facts are material. The instant case is at the class certification stage; at this stage, the court is not required to determine whether the donning time was *de minimis*. For purposes of the commonality requirement, it is sufficient that there are common questions of law and fact—such as whether and to what extent employees gathered and donned PPE prior to punching in, and whether the time those actions took was *de minimis*—for the donning subclass.

b. Meal Break Subclass

On the other hand, the court has significant concerns about the commonality requirement with respect to the meal break subclass. In August 2022, when the court ruled on the first class certification motion, it emphasized that the plaintiff had alleged (a) that if he returned significantly earlier than thirty minutes after he punched out, it was because supervisors required him to do so and (b) that Cut Fresh utilized a payroll software program that did not include breaks of less than thirty minutes in the employee's compensation. Dkt. No. 78 at 20.

In his brief in support of the instant renewed certification motion, the plaintiff describes the following common question: "Is an employee completely

relieved from duty for 30 minutes, and therefore received a bona fide meal period, though his employer suffered or permitted him to perform work during a portion of the meal period?" Dkt. No. 140 at 15. The plaintiff says that the common question of law is "whether an employee is completely relieved from duty during a meal period, if his employer suffered or permitted, rather than requested for him to work during the meal period." Id. He argues that if an employee is not completely relieved from duty in periods in which the employer suffered or permitted that employee to work, the employee received compensable *rest* periods under DWD §272.12(2)(c)(1) rather than a compensable *bona fide* mealtime under DWD §272.12(2)(c)(2). Id. at 16. He asserts that Cut Fresh should have promulgated a policy that required employees to take the full thirty minutes that was offered for a meal break. Id.

The problem with the plaintiff's most recent argument is the Seventh Circuit's decision in Wirth. The plaintiff acknowledges that Wirth held that meal periods were not compensable if the employer provided thirty minutes or more and the employee was completely relieved from duty. Id. at 15. In an apparent attempt to circumvent Wirth, the plaintiff *now* argues that on days when class members punched in fewer than thirty minutes after they punched out, they received compensable *rest* periods under DWD §272.12(2)(c)(1), not non-compensable *bona fide meal* periods under DWD §272.12(2)(c)(2). Id. The plaintiff argues that *rest* periods shorter than thirty minutes are compensable work time whether the employer requested, suffered or permitted its employees to cut short their meal periods. DWD §§272.12(2)(a)(1), (2)(c)(1). Under this new

theory, any *meal* break of less than thirty minutes—regardless of the reason the break was shorter than thirty minutes—must be compensated as a *rest* break. The plaintiff continues to focus on the *duration* of the break as the common question for the class, but now reclassifies the *type* of break to get around the holding in Wirth. And in focusing on the *duration* of the meal break, he insists that the court can rely on the class members' punch cards, which show the length of each class member's break.

This new argument exemplifies the fact that throughout this litigation, the plaintiff has made the meal break subclass a moving target. The plaintiff alleged in the original complaint and in the amended complaint that "one or more of the defendants provided to their employees a 30 minute unpaid meal break." Dkt. No. 11 at ¶115. At those times, the plaintiff's theory was that his supervisor knew that he was washing his hands and donning his PPE before punching back in on the time clock after his meal break and therefore knew that the plaintiff didn't receive the full thirty-minute break. Id. at ¶17. He alleged that sometimes he would need to finish additional work and would report a meal break that was so short that he could not comfortably eat. Id. at ¶19. He called the break a "meal" break—not a *rest* break. Now, years later, he argues that Cut Fresh should have known that its employees were taking breaks of less than thirty minutes, that Cut Fresh should have created a policy requiring them to take a break of at least thirty minutes and that any break of less than thirty minutes is a compensable *rest* break.

At the trial level in Wirth, Judge Griesbach addressed—and rejected—some of the arguments the plaintiff is making in this case. In Wirth, the plaintiff had alleged that the defendant failed to compensate her for meal periods that lasted less than thirty minutes. Wirth v. RLJ Dental, S.C., Case No. 18-cv-910 (E.D. Wis.), Dkt. No. 18 at ¶91. At trial, Judge Griesbach instructed the jury that if a meal break was less than thirty minutes, "it is considered an on-duty meal break under Wisconsin law and the entire break is compensable time." Wirth, Case No. 18-cv-910, Dkt. No. 91 at 5. Following the jury verdict in favor of the plaintiff, the defendant moved for judgment as a matter of law or a new trial on the "on-duty" meal claim. Id. at 1. The defendant argued that at some point years into the litigation, the plaintiff's attorneys had started calling the meal breaks "rest periods" despite originally classifying them as "meal periods." Id. at 9. The defendant asserted that DWD §272.12(2)(c) contrasts rest periods with meal periods and that its focus always has been on what the employer requires. Id. at 10. The defendant contended that the focus must be on the employer's actions rather than the amount of time provided. Id. at 11. In opposition to the Wirth defendant's post-trial motion for judgment as a matter of law, the plaintiff argued that under Wisconsin law, a meal break under thirty minutes never will be a *bona fide* meal period and instead constitutes a compensable rest break of short duration. Id., Dkt. No. 99 at 9.

Judge Griesbach granted the defendant's motion for a new trial, having concluded that he had erred in instructing the jury that the plaintiff was

entitled to payment for lunch breaks under thirty minutes and that the error was prejudicial. Id., Dkt. No. 108 at 2. Judge Griesbach explained that he had tried to reconcile DWD §272.12(2)(c) (distinguishing between rest and meal periods) and DWD §272.12(2)(a)(1) (work not requested but suffered or permitted constitutes work time). Id. at 5. He also factored in DWD §272.12(2)(a)(3), which imposes a duty on management to prevent employees from working when they are not supposed to. Id. at 6. Judge Griesbach concluded that the employer's duty is to provide the employee with thirty minutes free from work duties, but he found that there is no requirement that the employer must force its employees to take the full break. Id. at 6. He found that the sole fact that the defendant knew the plaintiff was clocking back in after less than thirty minutes did not mean that the defendant was required to pay the plaintiff for her break. Id. Judge Griesbach reasoned that the regulations require only that the employer pay for work "suffered or permitted" and that the defendant was doing as much when it paid the plaintiff once she punched back in. Id. at 9. He wrote, "By instructing the jury that RLJ's actual or constructive knowledge that Wirth was not taking a full thirty-minute break was sufficient to find that RLJ had failed to provide her required time off, the Court not only ignored the plain language of the regulation but also failed to take into consideration the risk that employees could manipulate the meal breaks in order to generate additional pay and/or claims against their employer." Id.

The Seventh Circuit's decision is helpful in trying to make sense of the plaintiff's arguments in this case. The court recited the following facts:

> RLJ Dental, S.C. is a dental service organization that has multiple offices across eastern Wisconsin. From May 2017 to February 2018, RLJ employed Rebecca Wirth as the office manager for its Neenah, Wisconsin location. Wirth was paid on an hourly basis and was required to clock in and out using the office's electronic timekeeping system. Wirth's workday usually began at 7:30 a.m. and concluded around 5:00 p.m.
>
> RLJ closed its offices every day from 1-2 pm and did not schedule any patients during that time. Employees were expected to take an hourlong lunch break during which they were not required to work and were free to leave the office. RLJ's employee handbook provided: "Employee[s] will clock out for lunch time and will clock back in when lunch is finished. Lunches are unpaid time[,], and you should not clock in until their [sic] next scheduled patient."
>
> Despite this policy, Wirth frequently clocked out for less than 30 minutes. Over the nine months that she worked for RLJ, she did this a total of 89 times. Wirth's supervisor repeatedly instructed her that she needed to take full lunch breaks, but Wirth ignored these instructions. On one occasion, Wirth told her supervisor that she had done some research and that RLJ could not force her to take the full break.
>
> After Wirth was terminated, she filed suit in federal court. Relevant to this appeal, Wirth argued that RLJ failed to compensate her for her numerous lunch breaks in violation of Wisconsin's Wage Payment and Collection Laws. Wisconsin law requires employers to compensate employees for breaks less than 30 minutes, but not for meal periods of 30 minutes or more during which the employee is completely relieved from duty. See Wis. Admin. Code, Dep't of Workforce Dev. § 272.12. Although RLJ paid her for the entire time she was clocked in during the lunch hour (despite her repeated violations of RLJ's handbook and her supervisor's admonitions), Wirth argued that RLJ was also required to pay her for the time she was clocked out and admittedly not working.
> The jury returned a verdict in favor of Wirth, finding that RLJ was required to compensate her for the time she was clocked out during the 89 shortened lunch breaks. Following trial, the court concluded that it had made a prejudicial error in instructing the jury and that under Wisconsin law, RLJ was not required to compensate Wirth for the lunch periods as long as it consistently provided her with a break

> of at least 30 minutes. The court granted RLJ's motion for a new trial to determine whether RLJ did so, and the parties stipulated to a bench trial.
>
> The court found that RLJ allowed a regular lunch break from 1-2 pm and that Wirth chose not to take the full break even though her job duties did not prevent her from doing so. The court also found that "Wirth was well aware of the law and intentionally manipulated her lunch hour so as to increase her earnings." Wirth does not challenge these findings on appeal. Instead, she challenges only the court's conclusion that RLJ was not required to compensate her for the time she was clocked out during her lunch break.

Wirth, 59 F.4th at 271-72.

What followed was a succinct ruling from the Seventh Circuit:

> The only issue on appeal is whether the district court's interpretation of Wisconsin law was correct. We review a district court's legal conclusions de novo. *Ernst v. City of Chicago*, 837 F.3d 788, 795-96 (7th Cir. 2016).
>
> Wirth argues that Wisconsin law imposes a bright-line rule that if an employee elects to take any break of less than 30 minutes, then the entire break period offered by the employer (here, an hourlong lunch break) must be compensated. In other words, Wirth wants to be paid not just for the portion of her lunch break during which she was clocked in, but also for the time she was clocked out and admittedly not working.
>
> Our analysis begins and ends with the plain language of the regulatory scheme, which distinguishes between compensable rest periods and non-compensable rest periods. *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1091 (7th Cir. 1999) (citing *State ex. rel. Jacobus v. State*, 208 Wis.2d 39, 599 N.W. 2d 900, 903 (1997)). The Wisconsin Department of Workforce Development provides that employees "must be paid for all time spent in physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer's business." Wis. Admin. Code, Dep't of Workforce Dev. § 272.12(1)(a)(1). Employees must also be paid for "rest periods of short duration[,]" which are defined as breaks of less than 30 minutes. *Id.* at § 272.12(2)(c)(1). Wisconsin law distinguishes rest periods from meal periods. Meal periods of 30 minutes or more during which employees are completely relieved

> from duty for the purposes of eating regular meals are not compensable. *Id.* at § 272.12(2)(c)(2).
>
> Wirth attempted to transform her non-compensable meal period into a compensable rest period by clocking back in after less than 30 minutes, despite what her employer provided and her employer's repeated instruction to take her full break. Wirth wants us to focus on her conduct—the fact that she elected to take a lunch break of less than 30 minutes. But this focus is misplaced. The Wisconsin regulatory scheme focuses on what the employer provided, not what the employee elected. Because RLJ provided 30 minutes or more during which Wirth was completely relieved from duty for the purposes of eating lunch, RLJ was not obligated under the law to pay her for the time she was off the clock.

Id. at 272.

At the certification stage, this court must identify a policy or practice that is capable of class-wide resolution. With respect to the meal break subclass, the plaintiff pled that one or both defendants provided a thirty-minute meal break. The plaintiff filed a copy of the Cut Fresh, LLC employee handbook, which states:

> **Meal and Rest Breaks**
>
> Employees are entitled to a 30-minute unpaid meal break each day. If a nonexempt employee is required to work through a meal break, he or she will be paid for the 30-minute period. Employees are also entitled to one paid 15-minute rest period each day. Meal and rest breaks will be scheduled by the department supervisor or manager.

Dkt. No. 144-3 at 2. Like the plaintiff in Wirth, the plaintiff here did not plead in either of his complaints that breaks shorter than thirty minutes were compensable *rest* breaks. Like the plaintiff in Wirth, the plaintiff here argues in his reply brief in support of his motion for summary judgment that a meal break under thirty minutes is a "rest period[ ] that must count as hours

worked." Dkt. No.149 at 2. The Seventh Circuit rejected this argument in Wirth.

The plaintiff's reliance on punch cards as evidence supporting a common question also suffers under Wirth. Punch cards show the duration of an employee's break, but they do *not* show why the employee clocked in after less than the thirty minutes to which the Cut Fresh, LLC employee handbook entitled the employee. The handbook says that if an employee is *required* to work through a meal break, that employee will be paid for the whole, thirty-minute meal break period. But punch cards do not reveal whether the employee clocked in early because he or she was required to do so by a supervisor, or because he or she simply wanted to get back to work earlier, or for some other reason. The *plaintiff* says that if *he* clocked in early, it was because his supervisors required him to. But for part of the time, he was his own sanitation supervisor. And one of his sanitation supervisors attested that the entire sanitation team punched in and out together, so there'd be no need for anyone to leave or come back from the break early. Dkt. No. 126 at ¶25. The plaintiff's production supervisor stated that he was not entitled to a break when he came in early to work on production and would have had no reason to do so. Dkt. No. 127 at ¶¶29-30. In his pleadings, the plaintiff acknowledged that he sometimes donned his PPE before punching back in and that he sometimes wanted to finish additional work during his lunch hour. In other words, there are evidentiary issues with the plaintiff's assertions that he was required to clock in early, and he has provided no evidence other than punch

cards to demonstrate that putative class members were required to punch in early. There seem to be no common questions to be answered for the meal break class.

Despite the holding in Wirth, and the lack of evidence that putative class members were being required to punch in early, the plaintiff filed a motion for leave to file supplemental authority. Dkt. No. 155. He provided the court with the Wisconsin Court of Appeals' decision in Freeman, which the state appellate court decided just over two years after the Seventh Circuit issued its decision in Wirth. Dkt. No. 155. The plaintiff's motion asserts that Freeman is significant "because it demonstrates the Seventh Circuit's prediction of Wisconsin law in *Wirtz*[3] *v. RJ Dental*, 59 F.4th 270, 272 (7th Cir. 2023), was likely incorrect, so that class certification on the meal period claim is appropriate on the basis of a new common question that clearly satisfies the requirements of commonality, typicality and predominance." Dkt. No. 155 at 1-2. The plaintiff perceives that in Wirth, the Seventh Circuit had made a "prediction on whether the Wisconsin Supreme Court would require employers to compensate employees for meal periods, when the employer allowed the employee to take at least 30 minutes for the meal period but the employee chose to cut the meal period short to resume performing work[.]" Id. at 2. The plaintiff goes on to say that

> [t]he Seventh Circuit's prediction was based on DWD §274.02(3), which states that on-duty meal periods must both be counted as work time and paid; and defined on-duty meal periods to include

[3] Although the plaintiff refers to the plaintiff in the case as "Wirtz," the citation is for the Wirth decision.

> meal periods where the employer does not provide at least 30 minutes free from work. In other words, the Seventh Circuit predicted that because §274.02(3) requires compensation for meal periods during which the employer does not provide at least 30 minutes from work, the Wisconsin Supreme Court is likely to hold that all meal breaks for which the employer did provide at least 30 minutes free from work is compensable, even if the employee cut short the meal period to resume performing work.

Id. at 2-3.

The plaintiff reads the Wisconsin Court of Appeals' decision in Freeman to say that §272.12(2)(c) "created a brightline rule, so that a break running fewer than thirty consecutive minutes in duration cannot, by definition, be a bona fide meal period." Id. at 3. He opines that federal courts could sometimes be incorrect in their predictions of how state supreme courts would decide issues of state law, and he asserts that "[o]n questions of Wisconsin law, a ruling by the Wisconsin Supreme Court is controlling precedent." Id. at 4 (citing Sanchelima Int'l, Inc. v. Walker Stainless Equipment Co., LLC, 920 F.3d 1141, 1146 (7th Cir. 2019)). He maintains that where the state supreme court has not spoken, "decisions by the state's intermediate court of appeals control unless there are persuasive indications that the state supreme court would decide the issue differently." Id. (citing Kahn v. Walmart, Inc., 107 F.4th 585, 605 (7th Cir. 2024)). The plaintiff argues that in this case, "there are no persuasive indications that the Wisconsin Supreme Court is likely to disagree with *Freeman*'s interpretation of Wisconsin's regulations that govern the compensability of rest and meal periods." Id. at 4-5.

The court is confounded by the plaintiff's argument regarding Freeman. First, the Wirth court made no "predictions" about Wisconsin law. It read three

statutes—Wis. Admin. Code, Dep't of Workforce Dev. §272.12(1)(a)(1), §272.12(2)(c)(1) and §272.12(2)(c)(2)—and applied them to the facts. Second, the plaintiff asserts that the Wirth court was making a prediction about Wis. Admin. Code, Dep't of Workforce Dev. §274.02(3). It is not clear how the plaintiff reached that conclusion when neither court mentioned that statute (which requires employers to pay employees for "on-duty" meal periods, an issue that as far as this court is aware has not arisen in this case).

It is true that the Freeman court stated, "the plain language of § DWD 272.12(2)(c) . . . creates a bright-line rule: a break running fewer than thirty consecutive minutes in duration cannot, by definition, be a bona fide meal period." Freeman, 416 Wis.2d at 399. That seems to conflict with the holding in Wirth. But Freeman stands in an odd procedural posture. Freeman filed a class action complaint, but the defendant did not respond. Id. at 391. Freeman moved for class certification; the defendant did not respond. Id. at 391-92. The trial court certified the class without any adversary litigation. Id. at 392. In Freeman, there was no evidence presented that the employer provided employees at least thirty minutes free from work. Id. at 400. In contrast, in the instant case the plaintiff pled that one or both defendants *did* provide a thirty-minute meal break. The plaintiff filed pages from the Cut Fresh handbook, which states that employees are entitled to a thirty-minute meal break and a fifteen-minute rest break each day and that employees working through their meal break will be compensated. Dkt. No. 144-3. Perhaps most important, the

Seventh Circuit's Wirth decision governs this federal court, and remains good law.

Based on the allegations in the operative complaint, the evidence in the record and the application of the Rule 23 factors, the court cannot conclude that the meal break claims can be resolved on a class-wide basis, which means that the plaintiff has not met the commonality requirement for the meal break subclass.

3. *Typicality*

Another requirement, often intertwined with commonality, is typicality. The court must be satisfied that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of the other class members and [is] based on the same legal theory." Rosario v. Livaditis, 963 F.2d 1013, 1018 (7th Cir. 1992). The typicality requirement "primarily directs the district court to focus on whether named representatives' claims have the same essential characteristics as the claims of the class at large." De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d 225, 232 (7th Cir. 1983). The requirement of typicality "may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members." Id.

"Generally, a class representative's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and [his] claims are based on the same legal theory."

McFields, 982 F.3d at 517 (citation and quotations omitted). The court focuses on "whether the named representatives' claims have the same essential characteristics as the claims of the class at large." Muro v. Target Corp., 580 F.3d 485, 492 (7th Cir. 2009) (citation and quotations omitted).

In ruling on the plaintiff's first class certification motion, the court found that

> [t]he plaintiff has repeatedly asserted that he often started a shift by cleaning produce, which required him to wear production PPE; the defendants have not disputed that fact. That means that the plaintiff performed tasks that subjected him to the same company-wide policies and procedures that affected members of the proposed class. The plaintiff has met the typicality requirement.

Dkt. No. 78 at 47-48. The court did not specify whether it was making this finding as to the donning subclass, the meal break subclass or both.

In support of the current motion, the plaintiff continues to argue that the production and/or sanitation employees all followed the same flow at the beginning of their shifts and donned PPE before punching in (regarding the donning subclass). Dkt. No. 140 at 17. The plaintiff also argues that like the meal subclass members, he did not receive thirty minutes for a meal during which time he was completely relieved from duty and therefore he—and the other meal subclass members—should have been compensated (regarding the meal break subclass). Id. at 18.

As to the donning subclass, the defendants respond that the plaintiff cannot rely on "bald and inaccurate factual assertions" about donning, because even if the production employees had put on their PPE before punching in, the impact would be *de minimis.* Dkt. No. 148 at 28. They argue that the plaintiff

would be unfamiliar with the production donning/punch-in process because he was not a production worker. Id. As for the meal break subclass, the defendants say that the plaintiff has identified no facts typical of the class that would entitle class members to relief. Id. at 29. According to the defendants, the entirety of the plaintiff's argument is supported by "his own self-serving affidavit" which says, "If I punch in after a meal break less than 30 minutes after I punched out for the meal break, that would be because my supervisor called me back to work early." Id. at 30 (citing Dkt. No. 112, ¶10).

The court adopts its prior ruling with respect to donning. Dkt. No. 78 at 47-48. The plaintiff has identified tasks that subjected him to what he asserts were the same, company-wide policies or procedures that affected members of the donning class—gathering the bump hat and apron and possibly donning them before punching in.

But the Wirth decision and the plaintiff's shifting claims complicate the analysis for the meal break subclass. The plaintiff must identify facts that are typical of the class that would entitle the class to relief. As the court has explained, the punch cards alone do not establish a violation. The plaintiff states in his declaration that when he cut his breaks short, a supervisor required him to come back to work early. Dkt. No. 112 at ¶10. But that assertion relates only to him individually; he does not allege that whenever *class members* cut their breaks short, it was because a supervisor required *them* to come back early. And, for a time, *the plaintiff* was the sanitation lead—the supervisor who determined when sanitation employees took and returned

from breaks. Dkt. No. 127 at ¶40. During that time, *the plaintiff* would have been the supervisor who required himself to return to work early.

On this record, the court finds that the plaintiff has not satisfied the typicality requirement for the meal break subclass.

4. *Adequacy*

The plaintiff must show that he "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." Amchem Prod. Inc. v. Windsor, 521 U.S. 591, 625 (1997). "A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." Id. at 625-26.

If a lead plaintiff's "claim is atypical, he is not likely to be an adequate representative; his incentive to press issues important to the other members of the class will be impaired." Robinson v. Sheriff of Cook C'nty, 167 F.3d 1155, 1157 (7th Cir. 1999) (citing General Telephone Co. v. Falcon, 457 U.S. 147, 157 n.13 (1982)). Courts look for conflicts of interest or divergent interests, but "the mere possibility that a trivial level of intra-class conflict may materialize as the litigation progresses does not prevent class certification." Howard v. Cook C'nty Sheriff's Off., 989 F.3d 587, 610 (7th Cir. 2021) (citation and quotations omitted). Likewise, speculative or hypothetical conflicts do not foreclose class certification. See Kohen v. Pac. Inv. Mgmt. Co. LLC, 571 F.3d 672, 680 (7th Cir. 2009).

The court previously found that the plaintiff could adequately represent the class, but again, it did not specify whether it was making that finding as to the donning subclass, the meal break subclass or both. Dkt. No. 78 at 49. The plaintiff continues to emphasize that he followed the same "flow" in the facility that other production and sanitation employees followed by gathering PPE before punching in; he continues to argue that he would sometimes punch in fewer than thirty minutes after he punched out for a meal. Dkt. No. 140 at 18-19. He maintains that there is no conflict between himself and other class members. Id. at 19. The plaintiff also argues that the court should find class counsel to be adequate. Id.

The defendants argue that the plaintiff supervised the sanitation team and he determined the team's meal break. Dkt. No. 148 at 17. They say that on most nights the team took their thirty-minute break around midnight. Id. They maintain that if any supervisor called sanitation employees back to work early, it would have been the plaintiff and that fact would put his interests "squarely at odds with the rest of the class." Id. at 18. The defendants argue that the plaintiff abdicated his representative interests when he pursued summary judgment for his individual claims. Id. They assert that the plaintiff's filing of his renewed partial motion for summary judgment implicates the rule against one-way intervention, which prohibits a plaintiff from moving for certification after obtaining a favorable ruling on the merits of the claim. Id. The defendants contend that the plaintiff could—and should—have asked to extend the

deadline for filing dispositive motions beyond the court's decision on the renewed class certification motion. Id. at 20.

The defendants concede that the plaintiff "admittedly makes a stronger argument on adequacy as compared to the [other] three elements," although they do not differentiate between the plaintiff's adequacy argument regarding the donning subclass and his adequacy argument regarding the meal break subclass. Dkt. No. 148 at 30. Regarding the donning claim, the court does not question the plaintiff's ability to represent the interests of, at the least, the sanitation employees, and the plaintiff has alleged that he occasionally performed the tasks of the production crew.

But as it was with commonality and typicality, the court is concerned about the plaintiff's adequacy to represent the meal break subclass because, as the sanitation lead, there were times when *he* determined the team's meal break and *he* decided whether to call the team back early. Dkt. No. 127 at ¶40. The defendants also have proffered evidence that the plaintiff was not entitled to a meal break when he clocked in early to work in production for extra hours. Id. at ¶28. Although the court finds the plaintiff to be an adequate representative of the donning subclass, it cannot make that same finding with respect to the meal break subclass.

The court has concluded that the plaintiff has not met three of the four "universal" class certification requirements for the meal break subclass. Beyond that finding, the court has other concerns.

5. *Rule 23(b)(3) Requirements*

In addition to the four "universal" requirements, the proposed class must satisfy the Rule 23(b)(3) criteria. The plaintiff must show that (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. See Fed. R. Civ. P. 23(b)(3); 249 F.3d at 676. This must be supported by evidence. Comcast Corp. v. Behrend, 569 U.S. 27, 33 (2013).

Although the court has found above that the plaintiff had met the four "universal" class certification requirements as to the donning subclass, the plaintiff has made admissions regarding Rule 23(b)'s predominance requirement that require the court to modify the definition of that subclass.

a. Predominance

The predominance standard builds on Rule 23(a)(2)'s commonality requirement but is more demanding. Howard, 989 F.3d at 607. The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem, 521 U.S. at 623 (citation omitted). The court must "give careful scrutiny to the relation between common and individual questions in a case." Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. 442, 453 (2016).

The defendants did not directly address the Rule 23(b)(3) arguments in opposing the first motion for certification, and in ruling on that motion the court determined that the common questions predominated over individual

questions. Dkt. No. 78 at 52. But in opposition to the plaintiff's third renewed motion for certification, the defendants now have argued that all putative class members in the donning subclass were not subjected to the same conduct or practices because production employees don't wear the same PPE as sanitation employees. Dkt. No. 148 at 4-5. The defendants assert that "it was only on the days in which [the plaintiff] arrived early to process fruits and vegetables with the second-shift Production team that he was required to" wear the butcher's coat, plastic apron, hairnet, beard net, gloves, goggles and hard hat, because "Sanitation employees do not wear the PPE worn by Production employees and . . . [the petitioner] was a Sanitation employee." Id. at 5.

As for the meal break subclass, the defendants have proffered evidence that production and sanitation take different meal breaks. They argue that

> [p]roduction runs in two shifts. First shift operates from 6:30 a.m. to 4:30 p.m., while second shift begins at 4:30 and continues until the daily processing is complaint [sic], which is typically between midnight and 1:00 a.m. [Dkt. #127, ¶10]. Production employees are entitled to a 30-minute unpaid meal break. [Dkt. #127, ¶32]. Those meal breaks are staggered at the direction of the Shift Supervisor so the Production Floor can continue to operate without interruption. [Dkt. #127, ¶32]. Because the meal breaks are staggered, an employee causes no disruption to Production operations by taking his/her full 30-minute break. [Dkt. #127, ¶33]. As such, Production employees are not called back early from their meal breaks because there are always a sufficient number of employees remaining on the Production Floor to keep operations running and/or respond to exigent circumstances. [Dkt. #127, ¶34].
>
> Sanitation operates only at night. Sanitation cannot begin cleaning the Production Floor until the second-shift Production team concludes for the day. [Dkt. #127, ¶11]. As such, Sanitation employees typically begin around 10 p.m. and work until Production Floor cleaning is complete, which is often around 5:00 a.m. [Dkt. #127, ¶11]. Sanitation meal breaks take place at or around midnight because Sanitation cannot start deep cleaning the Production Floor

> until second-shift Production concludes for the night, which typically occurs between midnight and 1:00 a.m. [Dkt. #126, ¶24]. The entire Sanitation team always departs for and returns from meal breaks at the same time because Sanitation employees work together and in coordination, so there is no reason for one team member to depart for or return from break early. [Dkt. #126, ¶25]. Because Sanitation could not begin deep cleaning the Production Floor until second-shift Production ended, often around 1:00 a.m., there was never any pressure to return from the midnight meal break early. [Dtk. #126, ¶28].

Id. at 6-7.

The defendants also contend that the meal break subclass assumes a bright-line rule that anyone who takes a break of less than thirty minutes must be compensated for the whole thirty minutes—the type of rule rejected by the Seventh Circuit in Wirth. Id. at 7, 8-9. They argue that the plaintiff has proffered only punch data, and that isn't sufficient because it does not reveal whether the employee elected to return to work early. Id. at 9. And the defendants reiterate their claim that the meal break subclass is otherwise an improper fail-safe class. Id. at 6-12.

In his reply brief, the plaintiff admits that sanitation employees go to a different room to don additional PPE and that they are compensated for that time because the room can be accessed only after they punch in. Dkt. No. 150 at 13. But he insists that the flow of the facility was the same for both production employees and sanitation. Id. That said, he says that if the court finds that the class should be limited to production employees, the court can modify the class definition accordingly. Id. He then argues that the court can uniformly decide whether Cut Fresh shortened the meal periods when they used the meal punch times to calculate hours worked and whether Cut Fresh

"adequately promulgated and enforced a policy against unwanted work or whether it suffered or permitted its employees to work during a portion of their meal periods." Id. at 14.

As for the donning subclass, the plaintiff's concessions that the PPE and equipment were different for production and sanitation employees, and that the sanitation employees were compensated for the time spent donning PPE in the special room after they punched in, require a second look at the class definition. The proposed donning subclass covers "all hourly employees employed by Defendant Cut Fresh, LLC who during the time period between November 6, 2018 and the present . . . worked as a production or sanitation employee for Cut Fresh . . . ." Dkt. No. 140 at 1. The plaintiff now admits that the sanitation employees go to a special room to don additional PPE and that they are paid for that time because they go to that special room only after punching in. Dkt. No. 150 at 13. The plaintiff made these admissions in response to the defendants' predominance arguments, but they call into question the court's earlier conclusion that the plaintiff had met the commonality requirement for the donning subclass. These admissions raise questions about whether evidence would be common to a class of all sanitation and production employees; it now appears that there would be common evidence and questions for a sub-subclass of employees who worked in sanitation and separate questions and evidence about a sub-subclass of those who worked in production.

Meanwhile, the current definition of the meal break subclass covers all hourly employees who, between November 6, 2018 and the present, punched in after a meal period less than thirty minutes after punching out for the meal period. Dkt. No. 140 at 1. Aside from the fact that an individual must have had a shortened break to qualify as a member, the definition assumes that there is a bright-line rule requiring compensation for any break under thirty minutes. Wirth rejected that premise by emphasizing that the sole focus is on what the employer provided, not what the employee elected to take. Wirth rejected the argument that it doesn't matter why someone returns early, and Wirth remains controlling authority. Harwell-Payne v. Cudahy Place Senior Living LLC, Case No. 21-cv-328, 2026 WL 936168, *28 (E.D. Wis. Mar. 31, 2026). Absent proof of a policy or practice universal to the class (and there is no such proof), the plaintiff must prove that all class members clocked in early because their supervisor required them to do so, and the plaintiff has not proven that. The plaintiff has not met his burden with respect to the meal break subclass.

b. Superiority

The court finds that the class is a superior means of adjudication with respect to the questions surrounding the PPE donned by sanitation employees and the PPE donned by production employees.

6. *Conclusion*

As to the donning subclass, the court will certify a Rule 23 class as to all hourly employees employed by Defendant Cut Fresh, LLC who, during the time period between November 6, 2018 and the present, worked in production or

performed the tasks of a production employee **or** worked in sanitation or performed the tasks of a sanitation employee.

As for the meal break subclass, the court will not certify the subclass.[4]

## III. Defendant V. Marchese's Motion for Summary Judgment (Dkt. No. 85)

### A. Defendant's Brief (Dkt. No. 86)

Defendant V. Marchese moves for summary judgment because the plaintiff admitted that he named V. Marchese as a defendant out of an abundance of caution (citing Dkt. No. 11 at ¶1), the plaintiff never worked for V. Marchese (citing Dkt. Nos. 6 at ¶¶1-2; 11 at ¶1) and the plaintiff since has abandoned all claims against V. Marchese (citing Dkt. Nos. 66 at ¶5; 71 at 1; 82 at 3). Dkt. No. 86 at 1. V. Marchese argues that not only did the plaintiff withdraw V. Marchese drivers from the request to certify a conditional class (citing Dkt. No. 66 at ¶5), but he also removed V. Marchese from the class definition and sought certification of a class comprised of Cut Fresh employees (citing Dkt. No. 82 at 3). Id. at 1-2. V. Marchese argues that the plaintiff never has sought to include V. Marchese employees in the classes he seeks to represent, he has not alleged conduct by V. Marchese and he has admitted that he named V. Marchese by mistake. Id. at 2. V. Marchese argues that it should be dismissed because the plaintiff has failed to proffer any facts in support of a cause of action against it. Id. at 5.

[4] Because the court cannot certify the meal break subclass, it need not address the defendants' "fail-safe class" argument.

B. Plaintiff's Brief in Opposition (Dkt. No. 93)

The plaintiff responds that he is pursuing joint and several liability against V. Marchese for the wages owed by Cut Fresh. Dkt. No. 93 at 1. He asserts that, under the FLSA, V. Marchese and Cut Fresh formed a single employer. Id. He contends that under Wisconsin law, the defendants formed a "single operationally integrated enterprise that cleaned, processed and delivered produce to customers, so that Plaintiff can look to Marchese as a person that engaged in the common enterprise for wages owed to him by the enterprise." Id. at 2. He maintains that he has argued for joint and several liability throughout this litigation, so he has not waived the theory. Id. at 2.

The plaintiff believes that the Seventh Circuit will follow the lead of a court in the Western District of Wisconsin holding that "two nominally separate entities can form a single employer" under the FLSA. Id. at 5 (citing Bruske v. Capitol Watertown Sprechers, LLC, Case No. 19-cv-851, 2021 WL 7502269, *4 (W.D. Wis. May 26, 2021)). The plaintiff asserts that the Seventh Circuit applied a single employer doctrine to impose joint and several liability in a case involving unpaid ERISA contributions. Id. (citing Moriarty v. Svec, 164 F.3d 323, 332-335 (7th Cir. 1998)). According to the plaintiff, the definitions of "employer" in the FLSA and ERISA are virtually identical. Id. (comparing 29 U.S.C. §203(d) and 29 U.S.C. §1002(5)). He cites district courts in other circuits that have imposed joint and several FLSA liability under the single employer theory. Id. (citing Juarez v. 449 Restaurant, Inc., 29 F. Supp. 3d 363, 368 (S.D.N.Y. 2014); Lee v. S & E Flag Cars, LLC, Civil Action No. 14-CV-176, 2022

WL 56522 (E.D. Ky. 2022); Creech v. P.J. Wichita, LLC, Case No. 16-2312, 2016 WL 4702376 (D. Kan. 2016)).

According to the plaintiff, the operations of two entities are interrelated when they share the same office, when the services they perform for customers are integrated so that one person makes decisions on customers dealt with by both entities and when they share daily operations that are critical to the smooth functioning of both companies. Id. at 6 (citing Lippert Tile v. Bricklayers District Council of Wis., 724 F.3d 939, 947 (7th Cir. 2013)). He argues that the defendants form a unified operation: Cut Fresh processes fruits and vegetables received from V. Marchese and 100% of the fruits and vegetables processed by Cut Fresh are provided to V. Marchese or delivered to V. Marchese customers. Id. The plaintiff explains that the two defendants share operations; the same CFO, HR Director and Quality Assurance Director; and the same payroll software, attendance policy and person to follow up on accounts receivable. Id. at 7. He asserts that V. Marchese and Cut Fresh even have the same three owners. Id. at 8.

The plaintiff argues that V. Marchese is liable for wages that Cut Fresh owed to the plaintiff under Chapter 109 of the Wisconsin statutes because DWD §272.01(5) defines "employer" as any firm that has control or direction of any person employed at any labor or who is responsible directly or indirectly for the wages of another. Id. at 8-9. The plaintiff reasons that Chapter 109 is "interrelated to Chapter 272" because it provides an enforcement mechanism for wages required to be paid by the regulations. Id. He says that under Wis.

Stat. §109.01(1r), an "employer" includes any person engaged in an enterprise employing one or more persons within the state. Id. at 9-10. The plaintiff urges the court to harmonize Chapter 109 with DWD regulations and conclude that V. Marchese was his employer because it had the right to control the manner of the plaintiff's day-to-day work if it formed a single enterprise with Cut Fresh. Id. at 11.

The plaintiff acknowledges that Wis. Stat. §109.01 does not define the term "enterprise," but he argues that this court should predict how the Wisconsin Supreme Court would rule by looking to caselaw interpreting the FLSA. Id. The plaintiff acknowledges that the FLSA uses the concept of enterprise to determine coverage rather than to define liability, but dismisses that difference as the "result of how the statutes were drafted rather than because of any intended difference in the meaning of the term 'enterprise.'" Id. The plaintiff argues that the court could "easily" find that the defendants were engaged in related activities: V. Marchese drivers delivered fruits and vegetables to Cut Fresh for processing and V. Marchese drivers delivered the same fruits and vegetables to its customers. Id. at 12. Employees had the same attendance policy, payroll software and HR Director. Id. at 12-13.

Responding to the defendants' argument that the plaintiff admitted that naming V. Marchese in the original complaint was a "mistake," the plaintiff now argues that his mistake was in assuming that V. Marchese was his only employer. Id. at 13. He maintains that how he defined the class is "not a concession that joint and several liability cannot be imposed upon Marchese

for the same unpaid wages." Id. at 14. He goes as far to say that the defendants should have known that V. Marchese would be liable because in the Rule 26(f) report (Dkt. No. 23 at 2), the defendants denied that they were joint employers and the plaintiff argued in his motion for conditional certification (Dkt. No. 47 at 15-17) that the defendants formed a single employer. Id. According to the plaintiff, his renewed motion for class certification included a paragraph in the class notice stating that the plaintiff "alleges that Marchese & Co was a single employer with Cut Fresh, so that if Cut Fresh cannot afford to pay amounts that the Court determines are owed to you, Marchese can be responsible for making the payments." Id. at 14 (citing dkt. no. 81-1 at 2). The plaintiff adds that judicial estoppel would not be applicable in this case because there is no instance where the plaintiff has persuaded the court to accept his earlier position. Id. at 15 (citing Reed Elsevior, Inc. v. Muchnick, 599 U.S. 154, 170 (2010)).

C. Defendant's Reply Brief (Dkt. No. 101)

The defendants reply that it borders on slanderous to suggest that "if judgment is obtained against Cut Fresh alone there is a risk Defendants would manipulate their assets to make Cut Fresh appear uncollectable." Dkt. No. 101 at 1 (citing Dkt. No. 93 at 1). They continue to emphasize that the plaintiff never has pled joint and several liability, never has pled that the entities are alter egos or joint employers and never has pled facts to support the interrelationship of the operations, common management, centralized control of labor relations or common control; nor has the plaintiff requested relief on

the basis of the joint employer status. Id. at 1-2. The defendants ask the court to hold the plaintiff to his allegation in the amended complaint that he was "alleging claims against Marchese out of an abundance of caution given the close relationship between the two entities, in case Cut Fresh would claim Marchese was his employer." Id. (citing Dkt. No. 11 at ¶1).

The defendants say that the proper process would have been for the plaintiff to seek leave to amend the complaint. Id. at 3. They assert that the case upon which the plaintiff relies (Bruske, 2021 WL 7502269) involved a circumstance in which the same attorney who represents the plaintiff in this case asked the Western District court for leave to file an amended complaint to add a claim of single employer. Id. at 4. They point out that the plaintiff's attorney has not made that request here. Id.

The defendants argue that, "even under the most liberal of interpretations, Plaintiff's First Amended Complaint cannot be read to provide sufficient notice to Defendant of any claim of joint employer status." Id. at 6. The defendants point to paragraphs 6, 7 and 8, which separately refer to the two defendants without any allegation that they were joint employers. Id. (citing Dkt. No. 11 at ¶¶6-8). They observe that even the prayer for relief asks the court to find "one or more of the defendants" liable. Id. at 7 (citing Dkt. No. 11 at 12-13).

The defendants argue that most of the cases cited by the plaintiff are ERISA cases from other jurisdictions and that none support the plaintiff's position. Id. According to the defendants, the cases the plaintiff cites involved

allegations within the complaint regarding joint and several liability, common control and/or that the entities formed a single employer. Id. at 7-10. They assert that the Seventh Circuit cases the plaintiff cites also involved allegations in the complaint about a joint employer status. Id. at 11.

D. Analysis

This motion is not about whether the plaintiff can establish that the defendants are a single employer or a single enterprise, or whether V. Marchese is jointly and severally liable to the plaintiff and any class members for unpaid wages. The defendants' motion focuses on whether allegations of this type must be pled in a complaint.

The plaintiff initially filed the lawsuit against V. Marchese—not Cut Fresh. The plaintiff alleged:

> 6. Defendant Marchese is a Wisconsin business corporation located in Milwaukee, Wisconsin that processes and sells fruits and vegetables throughout the Midwestern United States. Both Marchese's principal place of business and its registered agent are located at 600 S. Jack Marchese Way; Milwaukee, WI. 53204-1665.
>
> 7. Marchese by virtue of its employing activities and operations within Wisconsin constitutes an employer within the meaning of Wis. Stat. 109.03(1). Marchese is also an employer engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. 203, by, for example, selling fruits and vegetables to customers located outside the State of Wisconsin. At all relevant times, Marchese has had annual gross volume of business at or above $500,000.

Dkt. No. 1 at ¶¶6, 7.

Several months later, the plaintiff filed an amended complaint and added Cut Fresh as a defendant. Dkt. No. 11. In the first paragraph, the plaintiff explained that he believed that he was employed by Cut Fresh but that he was

including V. Marchese in the first amended complaint "out of an abundance of caution given the close relationship between the two entities, in case Cut Fresh would claim Marchese was his employer." Dkt. No. 11 at ¶1. He further alleged:

> 6. Defendant Marchese is a Wisconsin business corporation located in Milwaukee, Wisconsin that may have engaged in the business of processing and selling fruits and vegetables throughout the Midwestern United States. Both Marchese's principal place of business and its registered agent are located at 600 S. Jack Marchese Way; Milwaukee, WI. 53204-1665.
>
> 7. Defendant Cut Fresh, LLC is a vendor of precut fruits and vegetables selling its products throughout the Upper Midwestern United States. Cut Fresh has a principal place of business located at 300 E. National Avenue in Milwaukee, Wisconsin.
>
> 8. Defendants by virtue of their employing activities and operations within Wisconsin constitutes employers within the meaning of Wis. Stat. 109.03(1). Defendants are engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. 203, by, for example, purchasing fruits and vegetables from out of state vendors, selling processed fruits and vegetables to customers located outside the State of Wisconsin, and by transporting their products to customers located outside the State of Wisconsin. At all relevant times, each Defendant has had annual gross volume of business at or above $500,000.

Dkt. No. 11 at ¶¶6-8. The plaintiff alleged that both V. Marchese and Cut Fresh were employers, and that "one or more of the defendants" took actions that violated the FLSA and Wisconsin wage laws. Id. at ¶¶9-11, 13, 15, 18, 20-21, 23, 27, 29, 36, 42. In his prayer for relief, the plaintiff asked the court to find one or more of the defendants liable to him and the members of the class. Id. at 12.

Although the amended complaint never mentions joint and several liability or alleges that the defendants were a single employer or single enterprise, the defendants certainly anticipated the argument. In their joint

Rule 26(f) report, the defendants denied that Marchese and Cut Fresh were joint employers. Dkt. No. 23 at 2. As far back as October 1, 2021, the plaintiff argued that the court should certify a collective of drivers employed by V. Marchese and cited evidence that the defendants shared owners, a human resources director, a CFO and a payroll system. Dkt. No. 46 at 14. He asserted that the court could uniformly determine whether V. Marchese and Cut Fresh formed a single employer under the FLSA. Id. at 17. In his September 9, 2022 renewed motion for class certification, the plaintiff argued that the amended complaint should relate back to the first complaint because Cut Fresh either knew or should have known that the plaintiff had made a mistake as to the proper party's identity. Dkt. No. 82 at 3. Specifically, the plaintiff argued that "when Cut Fresh was served with a First Amended Complaint that named it as a defendant, but was otherwise identical to the original Complaint, it had to know that it would have been named a defendant in the original Complaint but for Plaintiff's mistaken belief that *Marchese was his only employer*."[5] Dkt. No. 82 at 3 (emphasis added).

The FLSA applies only where there is a valid employer-employee relationship, and the plaintiff has alleged from the outset that one or more of the defendants are liable to him under the FLSA and Wisconsin wage laws as his employer. His single employer theory first surfaced in 2021 and has reappeared in briefs over the years, consistent with allegations that one or both

[5] The amended complaint alleges that the plaintiff "believes he was employed by Cut Fresh, LLC at all relevant times." Dkt. No. 11 at ¶1.

defendants are liable to him as his employer. The defendants could not have been surprised by the arguments and can't credibly assert that they didn't anticipate them, because the defendants brought up the joint employer theory in their Rule 26(f) report. Moreover, it is established law that in this circuit that "[a] complaint need not plead legal theories." Joseph v. Elan Motorsports Techs. Racing Corp., 638 F.3d 555, 561 (7th Cir. 2011) (collecting cases).

Because the plaintiff alleged claims under the FLSA and the Wisconsin wage laws against one or both defendants and pursued the joint and several liability theory throughout the litigation, the court will not dismiss V. Marchese simply because the first amended complaint didn't spell out the legal theory. The court will deny the defendant's motion.

## IV. Plaintiffs' Renewed Partial Motion for Summary Judgment (Dkt. No. 141)

### A. Plaintiff's Brief (Dkt. No. 142)

When the court ruled on the plaintiff's first motion for summary judgment, it allowed the plaintiff to revisit the portion of his brief impacted by Wirth, but it instructed him to include all his arguments in his brief-in-chief. Dkt. No. 138 at 21. In the brief in support of his renewed summary judgment motion, the plaintiff argues that Cut Fresh is equally liable to the plaintiff whether it required "or suffered or permitted him to perform work in the form of shortened meal periods." Dkt. No. 142 at 2. Alternatively, he argues that the meal periods were compensable, on-duty meal periods under DWD §274.02(3) and that Cut Fresh cannot rely on the declarations of two witnesses, Salvator Marchese and Louis Ramirez, who were not disclosed as persons likely to have

discoverable information. Id. Finally, the plaintiff argues that the court should rule that defendants have the burden to prove that their employees voluntarily returned early from their meal periods. Id.

Citing Wirth, the plaintiff argues that the court must find Cut Fresh liable to him unless it provided him with at least thirty minutes free from work and he was completely relieved from duty for thirty minutes or longer. Id. at 3. According to the plaintiff, Wisconsin law treats work time as compensable whether the employer requested, suffered or permitted the employee to perform the work. DWD §272.12(2)(a)(1). Id. at 3. He asserts that further support for his argument lies in DWD §272.12(2)(c)(1), which provides that rest periods under thirty minutes must count as work time. Id. at 4. He also cites 29 C.F.R. §785.19, which provides that for a meal period to be *bona fide*, the employee must be completely relieved from duty for the purpose of eating regular meals. Id. The plaintiff attempts to reconcile Wirth by arguing that the employer in Wirth completely relieved the plaintiff in that case from duty for a full thirty minutes and made a reasonable effort to enforce a policy that required the plaintiff to be off for a full thirty minutes. Id. at 5.

The plaintiff insists that in this case, Cut Fresh knew of the shortened meal periods because it used the plaintiff's punch-out times to compute hours worked. Id. at 5-6. The plaintiff argues that despite this knowledge, Cut Fresh never notified him of any policies that required him to take a full thirty minutes for a meal. Id. at 6. According to the plaintiff, the employee handbook states only that employees are entitled—rather than required—to take a thirty-minute

lunch break each day. Id. The plaintiff reasons that when he was not relieved from duty for thirty minutes or longer, the time should be considered a rest period under DWD §272.12(2)(C) rather than a *bona fide* meal period. Id. at 7.

Alternatively, the plaintiff argues that the defendants should have the burden to prove that he never voluntarily returned early from his meal break. Id. Citing DWD §274.02(3), the plaintiff argues that every time he punched in fewer than thirty minutes after he punched out, it was because Cut Fresh required him to return to work. Id. According to the plaintiff, the "only evidence that Defendants can muster to dispute Plaintiff's testimony are the declarations of Sal Marchese and Louis Ramirez." Id. He maintains that the declarations of those two individuals are not admissible because the defendants never served initial disclosures on the plaintiff and none of the discovery responses identified Sal Marchese or Louis Ramirez as potential witnesses. Id. at 8.

That plaintiff argues that under Rule 37(c)(1), a party cannot rely on a witness to supply information on a motion or at trial if the party did not identify the witness under Rule 26(a). Id. (citing Finley v. Marathon Oil Co., 75 F.3d 1225, 1230 (7th Cir. 1996)). He asserts that reopening discovery to allow the defendants to name Marchese and Ramirez would prejudice him because the case has been pending for years and reopening would create further delay. Id. at 9-10. He claims that having to expend resources to file another summary judgment motion would prejudice him. Id. at 10. The plaintiff says that the defendants never sought leave to submit the Marchese and Ramirez declarations. Id.

Finally, the plaintiff argues that in Wirth, the Seventh Circuit never addressed the question of who should bear the burden of proof as to whether an employee was compelled to return to work early, or voluntarily returned to work early. Id. at 11. The plaintiff cites two state supreme courts that have ruled that where the time records show the breaks were not statutorily compliant, the burden shifts to the defendant to demonstrate that no violation occurred. Id. (citing Donohoe v. AMN Services, LLC, 11 Cal. 5th 58, 76 (Cal. 2021); Brady v. Autozone Stores, Inc., 188 Wash. 2d 576, 583 (Wash. 2017)). The plaintiff explains that DWD §272.11(1)(e) requires employers to maintain records for three years showing the beginning and end times of meal periods. Id. He reasons that Cut Fresh should have the burden of showing that it provided a full thirty minutes to its employees. Shifting the burden, according to the plaintiff, would effectuate the legislative goal of ensuring that employees are paid their full wage. Id. at 13.

B. Defendants' Response (Dkt. No. 146)

The defendants respond that the plaintiff is trying to circumvent the clear language in Wirth by reframing any break of thirty minutes or less as a compensable meal break *or* rest period. Dkt. No. 146 at 2. The defendants assert that Wirth distinguished rest periods from meal periods. Id. at 2-3 (citing Wirth, 59 F.4th at 272). They reiterate that under Wirth, the Wisconsin regulatory scheme focuses on what the employer provided and not what the employee elected. Id. They also say that the plaintiff relies entirely on his own self-serving evidence, abandoning his role as class representative and filing his

own motion for summary judgment. Id. at 4. The defendants say that it wasn't until the plaintiff filed the motion with "false claims regarding statements and actions of his unnamed supervisors" that they needed Marchese and Ramirez (his supervisors) to provide information to rebut "these newly raised false claims." Id.

The defendants insist that the record is replete with genuine issues of material fact. Id. at 6. For example, they recount that the plaintiff worked for Cut Fresh between 2013 and 2020 and identified only two instances where he punched out and back in less than thirty minutes. Id. at 6-7 (citing Dkt. No. 111 at ¶¶22, 25). But the defendants say that they have proffered evidence that on both occasions, the plaintiff had punched out after his production shift and before his sanitation work began. Id. at 7-8 (citing Dkt. No. 124 at ¶¶44, 52-54, 56). In other words, the defendants argue that the plaintiff is asking to be compensated for time between shifts. The defendants also say that the plaintiff worked as a sanitation lead and that he determined when the sanitation team would take their meal breaks. Id. at 8. The defendants say there was no other supervisor who would have directed the team members to take their breaks. Id.

The defendants reiterate that Wirth eviscerated the bright light rule that any break less than thirty minutes is compensable. Id. at 9-10. The defendants say that Wirth requires that the plaintiff demonstrate that he did not receive a full thirty minutes and that he has offered no evidence supporting his burden. Id. at 10. In his declaration, the plaintiff states, "[i]f I punch in after a meal break less than 30 minutes after I punch out for the meal break, that would be

because my supervisor called me back to work early." Id. at 11. But the defendants reiterate that the two instances cited were not meal breaks and that Wirth did not shift the burden to the employer to give notice to an employee choosing to cut short his meal period. Id. at 12. The defendants argue that the California and Washington court decisions cited by the plaintiff have no bearing on the Wisconsin regulatory scheme. Id. at 13.

Finally, the defendants address the plaintiff's efforts to strike the Marchese and Ramirez declarations. Id. at 14. According to the defendants, Marchese and Ramirez's testimony became relevant only when—two years after filing the collective class action complaint—the plaintiff "abandoned his role as class representative and filed a motion for summary judgment in his individual capacity." Id. The defendants say that when the plaintiff first made claims about his unnamed supervisors, the defendants turned to those supervisors for evidence. Id. They say they have provided substantial initial disclosures and discovery; they previously identified and provided affidavits from Keith Kallin (Cut Fresh's Food Safety and Quality Assurance Manager) and Jeffrey Przbylski (V. Marchese's Department of Transportation Compliance Safety Manager), as well as deposition testimony of Josh Weber (Cut Fresh's CFO). Id. at 15. The defendants maintain that the court should consider all the evidence in the record and say that the introduction of the declarations was harmless; the defendants say that if the plaintiff's motion for class certification is granted, the discovery deadline will be extended by necessity and the court can give the plaintiff the opportunity to depose Marchese and Ramirez. Id. at 16. The

defendants report that when counsel tried to contact Kallin in January 2023 to respond to the plaintiff's motion, counsel learned that Kallin had retired in December 2022 and no longer would be able to participate. Id. at 16. The defendants also point out that the plaintiff has not sought supplemental discovery from Marchese and Ramirez since learning about their testimony. Id.

C. Plaintiff's Reply Brief (Dkt. No. 149)

The plaintiff replies that he had "far more than two instances of punching in less than 30 minutes after he punched out for a meal period." Dkt. No. 149 at 1. He says that he had eleven separate instances in May 2020 alone and that each of these occurred around midnight, which would have been too late for a transition period between his production and maintenance duties. Id. The plaintiff reiterates that Wirth did not address whether an employer is liable for meal periods if it "suffered or permitted its employees" to work during the period, because the plaintiff in Wirth did not make that argument. Id. at 2, 10. He maintains that his claim that he always was required to return to work early is undisputed, and that the court must disregard the Marchese and Ramirez declarations under Rule 37(c)(1). Id.

The plaintiff says that because he moved for summary judgment on liability only, his proposed findings contained only two instances of punching in less than thirty minutes after punching out. Id. at 3. Nevertheless, he maintains that his entire punch record is before the court; he says that that record demonstrates additional instances in which he punched out and punched back in at times that would be too late for a transition between shifts.

Id. He asserts that any transition periods are rest periods that would be compensable rest periods under DWD §272.12(2)(c)(1). Id. at 4.

The plaintiff also clarifies that he is not arguing that an employer is automatically liable when its employees take meal breaks shorter than thirty minutes. Id. at 5. He concedes that an employer would not be liable if it didn't know the employee was taking shortened breaks or if it enforced a policy that required employees not to work during meal breaks. He urges the court to harmonize regulations DWD §272.12(2)(c)(2) (*bona fide* meal periods of 30 minutes or more are not work time) and §272.12(2)(a)(1) (work not requested but suffered or permitted is work time). Id. at 5-6. He argues that the only conclusion the court can reach is that an employee is not relieved from duty when the employer either requested or suffered or permitted that he perform any work duties during the meal period. Id. at 6. He reasons that an employer suffered or permitted an employee to perform unwanted work if it knew of the work and failed to promulgate and enforce a policy against it. Id. (citing DWD §272.12(2)(a)(1) and 3).

The plaintiff argues that even if the court accepts Cut Fresh's interpretation of Wirth, he still is entitled to be paid for the entire meal period because Cut Fresh forced him to work while eating. Id. at 11. The plaintiff presented a declaration stating that he would take a break less of than thirty minutes only if he was called back to work by a supervisor, dkt. no. 147 at ¶5, and says that Cut Fresh relies on the undisclosed declarations of Marchese and Ramirez to oppose that assertion, id. at 12. The plaintiff argues that Cut

Fresh failed to serve initial disclosures altogether but knew it would need witnesses to defend this litigation. Id. He says that at the time he filed for conditional certification in October of 2021, he filed a declaration stating that he and others would return early only if supervisors called them to do so. Id. So the plaintiff reasons that by October of 2021, the defendants should have known that they would need Marchese and Ramirez's testimony to rebut the plaintiff. Id. at 13.

The plaintiff admits that the court will have to reopen discovery for the limited purpose of obtaining the collective and class members' pay rates to compute damages, but says that the case would be delayed months if the court were to reopen discovery to give the plaintiff an opportunity to depose Ramirez and Marchese and to file a new motion for summary judgment. Id. at 14. He argues that whether Cut Fresh has the burden of proof as to whether employees were forced to return to work or voluntarily returned to work is irrelevant, because "[e]ven if employees voluntarily returned to work, they did not receive 30 minutes completely relieved from duty because Cut Fresh suffered or permitted them to work during a portion of their meal periods." Id. at 15. Either way, the plaintiff argues that any break shorter than thirty minutes was a compensable meal or rest period. Id.

D. Analysis

The success of the plaintiff's motion (which relates to his individual claims) depends on whether the defendants can rely on the declarations of Marchese and Ramirez. A party is required to make initial disclosures at or

within fourteen days after the parties' Rule 26(f) conference unless a different time is set by court order. Fed. R. Civ. P. 26(a)(1)(C). A party must supplement its disclosures or interrogatory responses "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. 26(e)(1)(A). If a party fails to properly supplement its disclosures or interrogatory responses, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless" and the court may impose additional sanctions. Fed. R. Civ. P. 37(c)(1).

The exclusion of non-disclosed evidence is both automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless. Karum Holdings LLC v. Lowe's Cos., 895 F.3d 944, 951 (7th Cir. 2018) (citing Musser v. Gentiva Health Servs., 356 F.3d 751, 755 (7th Cir. 2004)). The district court possesses broad discretion to determine whether a party's violation of Rule 26(a) was justified or harmless. Rogers v. BNSF R.R. Co., 680 F. Supp. 3d 1027, 1044 (N.D. Ill. 2023) (quoting Mid-America Tablewares, Inc. v. Mogi Trading Co., 100 F.3d 1353, 1363 (7th Cir. 1996)). In determining whether a party's violation was justified or harmless, a district court considers factors such as "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved

in not disclosing the evidence at an earlier date." Id. (quoting David v. Caterpillar, Inc., 324 F.3d 851, 857 (7th Cir. 2003)).

The plaintiff has not filed a motion for sanctions under Rule 37. He asks the court to rule that the declarations are inadmissible because the defendants never served initial disclosures and never identified Marchese and Ramirez as potential witnesses, and because the plaintiff had "no reason to suspect" that Marchese or Ramirez would have information about his meal periods. Dkt. No. 142 at 8. Additionally, he emphasizes that the declarations were filed five months after discovery closed so he could not depose Marchese and Ramirez. Id.

Both parties have had problems complying with the rules and both have asked the court to ignore their own failures but enforce the rules against the other. In this instance, the court cannot find that the plaintiff was surprised by the declarations. As the court has recounted in this order, the plaintiff's strategy and theories in the litigation have shifted over time. The plaintiff spent the first two years pursuing his class claims against Cut Fresh. The defendants assert that the need for testimony from Ramirez and Marchese did not become apparent until the plaintiff stepped aside from his class claims and, prior to class certification, moved for partial summary judgment on his individual claims. Indeed, the defendants proffered the declarations in January of 2023, in opposition to the plaintiff's partial summary judgment motion. Dkt. Nos. 126, 127. Although the plaintiff suggests that the defendants should have known that his supervisors' testimony would be required, the defendants

explain that it wasn't until they returned to Kallin for his testimony in response to summary judgment that they first learned that he had retired and would be unavailable.

The plaintiff can't have it both ways. On December 2, 2022, the plaintiff filed a declaration and averred—under penalty of perjury—that

> I have never voluntarily cut short any of my meal breaks. If I punch in after a meal break less than 30 minutes after I punched out for the meal break, that would be because my supervisor called me back to work early.

Dkt. No. 112 at ¶10. Ramirez and Marchese were the plaintiff's supervisors. Ramirez avers that he was the plaintiff's direct supervisor in sanitation. Dkt. No. 126 at ¶5. Marchese became an assistant supervisor on second shift production in 2018 and currently serves as the COO of Cut Fresh. Dkt. No. 127 at ¶¶1, 6. Marchese avers that he supervised the plaintiff when he worked additional hours on production. Dkt. No. 127 at ¶21.

In the brief filed in support of the plaintiff's renewed motion for partial summary judgment, his attorney—subject to Rule 11—states that the "plaintiff had no reason to suspect that either Marchese or Ramirez would have knowledge of information that Cut Fresh may use to dispute he was forced to return early from his meal periods." Dkt. No. 142 at 8. It's hard to imagine that the plaintiff would not realize that his supervisors, whom he says ordered him back to work during his meal breaks, would not have relevant information. Because the plaintiff admits that he will need to reopen discovery for information about wage rates and the plaintiff's motion would have been denied in other respects, the court finds the defendants' reliance on the

declarations to be harmless and will allow the plaintiff to depose Marchese and Ramirez.

Having resolved that issue, the court turns to the plaintiff's arguments regarding his meal breaks. The plaintiff has taken the position that Cut Fresh suffered or permitted him to perform work during a portion of his meal period thereby converting it to a rest period rather than a *bona fide* meal period. Judge Griesbach rejected similar reasoning in Wirth where a plaintiff attempted to transform her non-compensable meal period in a compensable rest period by clocking back in after less than thirty minutes despite the instruction that she take a full break. Wirth, 59 F.4th at 272. The law in this circuit does not support a finding that anything less than thirty minutes must be compensated regardless of the employer's instructions and regardless of why the employee clocked back in. The court will not grant the plaintiff's motion for summary judgment on this claim.

Similarly, the court will not rule as a matter of law that the defendants cannot meet their burden of proving that the plaintiff ever voluntarily returned early from break. As for the evidence in the record, there are genuine issues of material fact. Ramirez and Marchese aver that sanitation employees who came early to work in production were not entitled to a meal break or fifteen-minute break because they were working a partial shift. Dkt. No. 126 at ¶17; Dkt. No. 127 at ¶28. Ramirez avers that sanitation employees took their unpaid meal breaks around midnight and it was always at least a thirty-minute break. Id. at ¶23. He says that the entire team left and returned at the same time because

they had to work in coordination, so there was no reason for anyone to come back early. Id.at ¶25. Meanwhile, Marchese avers that production employees were directed to punch out for at least thirty minutes before punching back in and that individuals are not called back early because there always are enough other employees on the floor during the staggered meal breaks. Dkt. No. 127 at ¶¶33-35. According to Marchese, the plaintiff—as the lead—would have determined when the sanitation employees returned from break. Id. at ¶40. Marchese avers that no one would have told the plaintiff had he had to return to work early and that the plaintiff was fired for clocking in for work (specifically production) and not actually working. Id. at ¶¶41-42.

For all these reasons, the court must deny the motion.

## V. Conclusion

The court **GRANTS IN PART** the plaintiff's third renewed motion for class certification. Dkt. No. 139. The court **CERTIFIES** the Rule 23 class as to all hourly employees employed by Defendant Cut Fresh, LLC who, during the time period between November 6, 2018 and the present, worked in production or performed the tasks of a production employee **or** worked in sanitation or performed the tasks of a sanitation employee. The court **DENIES** the plaintiff's motion for class certification in all other respects.

The court **DENIES** the defendants' motion for partial summary judgment. Dkt. No. 85.

The court **DENIES** the plaintiff's renewed partial motion for summary judgment. Dkt. No. 141.

The court **ORDERS** the parties to meet and confer regarding next steps and submit a proposed plan by **October 16, 2026**.

Dated in Milwaukee, Wisconsin this 17th day of September, 2026.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**